UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD AGEE, JR., an individual, *et al.,* | |
| Plaintiffs, | Case No. 1:22-cv-00272 |
| v. | **Three-Judge Panel Appointed Pursuant to 28 U.S.C. § 2284(a)** |
| JOCELYN BENSON, in her official capacity as the Secretary of State of Michigan, *et al.*; | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT SECRETARY OF STATE JOCELYN BENSON'S MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................................................. ii

    INTRODUCTION ........................................................................................................... 1

    BACKGROUND ............................................................................................................. 1

    STANDARD OF REVIEW ............................................................................................. 4

    ARGUMENT ................................................................................................................... 4

    A.    Defendant Benson's constitutional mandate to oversee, assist with, and enforce the unlawful District maps makes her a proper Defendant. ....................................................... 4

    B.    Plaintiffs' claimed deprivation of VRA rights is directly connected with Defendant Benson's role in creating and now administering the unlawful District maps, and she has the power to redress Plaintiffs' injuries by enforcing lawfully redrawn District maps. ...... 7

      1.  Defendant Benson's connection to Plaintiffs' deprivation of rights. .................................. 8

      2.  Plaintiffs' deprivation of VRA rights can be redressed by Defendant Benson enforcing lawfully redrawn maps. ........................................................................................... 9

    CONCLUSION ............................................................................................................... 9

# INDEX OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 4

*Banerian v. Benson*,
  No. 1:22-CV-54, 2022 WL 985780 (W.D. Mich. 2022) ......................................... 5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................... 4

*Bloch v. Ribar*,
  156 F.3d 673 (6th Cir.1998) ....................................................................................... 4

*Brown v. Jacobsen*,
  No. CV 21-92-H-PJW-DWM-BMM, 2022 WL 683089, at *7 (D. Mont. Mar. 8, 2022) .......... 8

*Carver v. Bunch*,
  946 F.2d 451(6th Cir. 1991) ....................................................................................... 7

*Detroit Caucus, et. al v. Independent Citizens Redistricting Commission*,
   969 N.W.2d 331 (2022) ............................................................................................. 5

*Directv, Inc. v. Treesh*,
  487 F.3d 471 (6th Cir. 2007) ...................................................................................... 7

*Easley v. Cromartie*,
  532 U.S. 234 (2001) .................................................................................................... 2

*Hunter v. Sec'y of United States Army*,
  565 F.3d 986 (6th Cir. 2009) ...................................................................................... 4

*Kroll v. White Lake Ambulance Auth.*,
   691 F.3d 809 (6th Cir. 2012) ..................................................................................... 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................... 7

*Miller v. Johnson*,
  515 U.S. 900 (1995) .................................................................................................... 2

*Socialist Workers Party v. Leahy*,
  145 F.3d 1240 (11th Cir. 1998) .................................................................................. 6

*Thornburg v. Gingles*,
  478 U.S. 30 (1986) ...................................................................................................... 2

**Statutes**

52 U.S.C. § 10301 .................................................................................................................. 1

**Other Authorities**

Bedoya, Alvaro, *The Unforseen Effects of Georgia v Ashcroft on the Latino Community*,
    115 Yale L.J. 2112 (2006) ................................................................................................. 3

Benson, Jocelyn, *Turning Lemons into Lemonade: Making Georgia v. Ashcroft the
    Mobile v. Bolden of 2007*,
    39 Harv. C.R.- C.L. L. Rev. 485 (2004) ............................................................................ 3

**Constitutional Provisions**

Mich. Const. 1963, art. II, § 4 .................................................................................................. 6

Mich. Const. 1963, art. II, § 9 .................................................................................................. 6

Mich. Const. 1963, art. IV, § 6 .............................................................................................. 6, 8

Mich. Const. 1963, art. IV, § 6(14) .......................................................................................... 5

Mich. Const. 1963, art. IV, § 6(2) ............................................................................................ 4

Mich. Const. 1963, art. IV, § 6(3) ............................................................................................ 5

Mich. Const. 1963, art. IV, § 6(4) ............................................................................................ 5

Mich. Const. 1963, art. V, § 3 .................................................................................................. 6

U.S. Const. amend. XIV, § 1 ................................................................................................... 1

## INTRODUCTION

In support of her plea to be dismissed from this proceeding, Defendant Secretary of State Jocelyn Benson drastically downplays her role in the redistricting process that resulted in the creation of Michigan's racially gerrymandered voting districts. Under Michigan law, however, the Secretary of State plays a substantial role in the redistricting process and, perhaps more importantly, is the chief election official charged with administering and enforcing the illegal voting districts challenged here. This Court should summarily deny her Motion to Dismiss.

## BACKGROUND

This case concerns the unlawful, racial gerrymandering of certain Michigan Senate and House of Representatives district boundary maps located in the Detroit metropolitan area. Specifically, these Districts were racially gerrymandered and deprive Plaintiffs their rights secured by Section 2 of the federal Voting Rights Act, 52 U.S.C. § 10301 ("VRA") and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1. ECF No. 8, PageID.85.

Each Plaintiff is a Black voter who regularly participates in federal, state, and local Democratic primary elections and plans to do so in the future. In addition to Defendant Benson, Plaintiffs sued the Michigan Independent Citizens Redistricting Commission and each of its Commissioners as defendants to their claims. ECF No. 8, PageID.109–11.

Because the challenged Districts were created, enforced, and will continue to be enforced with race as the predominate consideration, Plaintiffs bring claims against Defendants for violations of the Equal Protection Clause in Count III and Count IV of their Amended Complaint. ECF No. 8, PageID.143, 146. Specifically, the Districts subordinate traditional, race-neutral principles, such as compactness, contiguity, and respect for political subdivision or communities

to race as the predominant consideration for drawing district lines, violating Plaintiffs' constitutional rights. See *Miller v. Johnson*, 515 U.S. 900, 915 (1995); see also *Easley v. Cromartie*, 532 U.S. 234, 241 (2001).

Plaintiffs additionally bring claims against Defendants for violations of the VRA in Counts I and II of their Amended Complaint. ECF No. 8, PageID.135, 141. The VRA prohibits Defendants from drawing or enforcing any district boundary maps that "results in a denial or abridgment of any right of any citizen of the United States to vote on account of race or color." 52 U.S.C § 10301. The VRA further protects Plaintiffs' ability to elect candidates of their choice. *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986). To prevail on a VRA claim, Plaintiffs must establish: (1) that the minority group is "sufficiently large and geographically compact to constitute a majority in a single-member district," (2) that the minority group is "politically cohesive," and (3) that the rest of the electorate, or the white majority, votes sufficiently cohesively as a bloc to defeat the candidate preferred by the minority. *Id.*

Here, the Commission Defendants reduced the amount of Black voter majority-minority Districts in the House of Representatives Districts—i.e., districts with Black voting age populations over 50%—from ten to six and the Senate Districts from two to zero. The result will be decimation of Michigan's traditional Black Caucus. In redistricting parlance, the Commission Defendants, based on limited and tenuous expert opinion, replaced longstanding Black voter majority-minority districts (i.e., districts where Black voters have an opportunity to elect their candidate of choice) with what Defendant Benson has called "influence districts" (i.e., districts where Black voters only have an opportunity to elect their candidate of choice if White and other voters cast their ballots for the Black candidate of choice). Dilution of well-functioning Black majority-minority districts is referred to as unlawfully "cracking" such districts and is often

2

employed for partisan gain. As will be discussed in more detail below, Defendant Benson admittedly has enforced and will continue to enforce the unlawful Districts challenged here.

Notably, however, in writing about this practice while in academia, Defendant Benson correctly recognized that there are "dangers" to Black voters "in allowing influence districts to replace majority-minority districts[.]"[1] Specifically, Defendant Benson explained her belief, supported by "current empirical evidence," that it is "nearly impossible for minority candidates to elect the candidate of their choice outside of districts where more than 50% of the voting age population is a combination of minority groups."[2] At that time, Defendant Benson "proposed a ban on reductions below 55% of covered minority populations in any currently majority-minority district, unless the jurisdiction can present convincing evidence that racially polarized voting is nonexistent or that minority voters' participation rates will remain unaffected,"[3] evidence that is glaringly absent from the Commission's proceedings here.

Defendant Benson now says she should be dismissed from this case because she takes no position on the legality of the challenged Districts and because she will update the Districts if this Court so directs. What she fails to recognize is that her acknowledged power *not* to update the District maps and *to* take a substantive position regarding the Districts easily satisfies standing and justiciability. Plaintiffs do not have to take Defendant Benson at her word. Accordingly, her motion should be denied.

---

[1] Benson, Jocelyn, *Turning Lemons into Lemonade: Making Georgia v. Ashcroft the Mobile v. Bolden of 2007*, 39 Harv. C.R.- C.L. L. Rev. 485, 488 (2004).
[2] *Id.* at 495.
[3] Bedoya, Alvaro, *The Unforseen Effects of Georgia v Ashcroft on the Latino Community*, 115 Yale L.J. 2112, 2141–42 (2006) (emphasis added).

## STANDARD OF REVIEW

A complaint survives a motion for dismissal if it presents factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings do need to contain "detailed factual allegations," *Id*. at 570, but need merely allege "sufficient factual matter" that, if accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

This Court views the complaint in the light most favorable to Plaintiffs and accepts all factual allegations as true, drawing all reasonable inferences in Plaintiffs' favor. *Hunter v. Sec'y of United States Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). To survive a motion to dismiss a claim under 42 U.S.C. § 1983, Plaintiffs must allege two elements: (1) Defendants acted under color of state law, and (2) Defendants' conduct deprived Plaintiffs of rights secured under federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998).

## ARGUMENT

**A.  Defendant Benson's constitutional mandate to oversee, assist with, and enforce the unlawful District maps makes her a proper Defendant**.

Based on Defendant Benson's constitutional mandate to oversee, assist with, and enforce the unlawful District maps, Plaintiffs have established her role in depriving them of their rights, particularly at the pleading stage.

As the Michigan Secretary of State, Defendant Benson is charged with assisting the Commission in adopting District maps and enforcing District boundaries. The Secretary selects commissioners to be approved by the Legislature. Mich. Const. 1963, art. IV, § 6(2). Should a

4

vacancy arise during a commissioner's term, the Secretary, and the Secretary alone, fills the vacancy. Mich. Const. 1963, art. IV, § 6(3). The Secretary is the Commission's only permanent member and serves as its secretary. Mich. Const. 1963, art. IV, § 6(4). Defendant Benson is mandated to provide the Commission with "all technical services that the commission deems necessary." *Id.* What's more, if the Commission is unable to select a redistricting map, the Secretary is mandated to randomly select one herself. Mich. Const. 1963, art. IV, § 6(14)(c)(iii). If District maps are ordered to be redrawn, and the Commission cannot fulfill its duty and select a lawfully drawn map, the Secretary is mandated to choose one. And as the Secretary concedes in her Motion to Dismiss, she also has the authority to update (or not) the actual District maps that her office maintains for use by all Michigan election officials.

A variety of plaintiffs filed multiple lawsuits at both the state and federal levels after the Commission's formal adoption of the District maps on December 28, 2021. *E.g.*, *Banerian v. Benson*, No. 1:22-CV-54, 2022 WL 985780 (W.D. Mich. Apr. 1, 2022) (appeal to 6th Cir. filed May 4, 2022); *Detroit Caucus, et. al v. Independent Citizens Redistricting Commission*, 969 N.W.2d 331 (2022).

Most notable is the case before this very same three-judge panel in *Banerian v. Benson*, No. 1:22-CV-54, 2022 WL 985780 (W.D. Mich. Apr. 1, 2022) (appeal to 6th Cir. filed May 4, 2022). The *Banerian* plaintiffs challenged the constitutionality of the Commission's drawing of certain congressional districts and named Defendant Benson and the Commission as defendants. *Id.* at *2. Despite the similar constitutional claims and requested relief, Defendant Benson did not move to dismiss in her first responsive pleading. *Defendant Benson's Answer to Plaintiffs' First Amended Complaint*, Case 1:22-cv-00054-PLM-RMK-JTN ECF No. 46, PageID.936 Filed 02/18/22. Instead, Defendant Benson has at all times actively participated in the pending *Banerian*

5

litigation, consistent with her role as Michigan's chief elections officer. As she acknowledged in that litigation, "[t]he Michigan Legislature has delegated the task of conducting proper elections to the Secretary, an elected executive-branch officer, and the head of the Department of State. Mich. Const. 1963, art. II, § 4, art. V, §§ 3, 9. It is in this capacity that Secretary Benson appears before this Court." *Defendant Michigan Secretary of State Jocelyn Benson's Response to Plaintiffs' Motion for Preliminary Injunction*, Case 1:22-cv-00054-PLM-RMK-JTN ECF No. 47, PageID.988.

Defendant Benson's Motion to Dismiss here contradicts her position in *Banerian*. In *Banerian*, she recognized her constitutional duty to enforce and facilitate implementation of the new District maps in upcoming elections. Here, she does not. Moreover, her constitutional duties go far beyond updating maps. As noted, Defendant Benson is constitutionally mandated under Mich. Const. 1963, art. IV, § 6 to select commissioners, serve as the Commission's secretary, fill commissioner vacancies, provide any technical service the Commission deems necessary, unilaterally select District maps if the Commission is unable, and enforce the District maps as Michigan's chief election officer. Doing so here violates Plaintiffs' rights under the Equal Protection Clause.

It is irrelevant that Defendant Benson says she will abstain from taking a substantive position on the merits of this case regardless of whether she is a party, and it is meaningless that Defendant Benson says she will update the district maps if Plaintiffs prevail in this suit. *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1246 (11th Cir. 1998) (finding a "credible threat of prosecution" and standing to sue the Florida Secretary of State, even after she "disavow[ed] ... authority to enforce [the law at issue]," because she "ha[d] the power" to enforce the law). It satisfies justiciability and redressability that Defendant Benson has the power *not* to update the

6

District maps, and the power *to take* a substantive position. Indeed, without Defendant Benson's presence as a party, it is not immediately clear whom this Court would direct to update District maps within the Office of the Michigan Secretary of State.

In sum, Plaintiffs have sufficiently plead Counts III and IV of their Amended Complaint against Defendant Benson and her motion should be denied.

**B.     Plaintiffs' claimed deprivation of VRA rights is directly connected with Defendant Benson's role in creating and now administering the unlawful District maps, and she has the power to redress Plaintiffs' injuries by enforcing lawfully redrawn District maps.**

Standing requires an "injury in fact," a sufficient "causal connection between the injury and the conduct complained of," and a "likelihood" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must "plead a concrete, particularized, and imminent injury in fact caused by the defendant that a favorable judicial outcome would likely remedy." *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 813 (6th Cir. 2012). "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-455 (6th Cir. 1991)). Such a motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

Defendant Benson concedes that Plaintiffs pled sufficient facts to establish an injury in fact. ECF No. 8, PageID.211. As discussed below, contrary to Defendant Benson's arguments, her role in creating and now enforcing the unlawful maps and her power to redress Plaintiffs' injuries by administering lawfully redrawn district maps satisfies standing here.

7

### 1. Defendant Benson's connection to Plaintiffs' deprivation of rights.

As discussed above, the Secretary is constitutionally mandated under Mich. Const. 1963, art. IV, § 6 to select commissioners, serve as the Commission's secretary, fill commissioner vacancies, provide any technical service deemed necessary by the Commission, unilaterally select district maps if the Commission is unable, and enforce the district maps as the State's chief election officer. Regardless that the Secretary did not draw the maps herself, her actions are directly connected to the creation of the unlawful districts and the deprivation of Plaintiffs' rights under the VRA.

Recently, in *Brown v. Jacobsen*, No. CV 21-92-H-PJW-DWM-BMM, 2022 WL 683089, at *7 (D. Mont. Mar. 8, 2022) (unpublished), the District Court rejected a similar argument by the Montana Secretary of State. In *Brown*, plaintiffs challenged the Montana Legislature's apportionment of the electoral districts for Montana's Public Service Commission and sought to enjoin the Secretary of State's administration of the allegedly offending districts. The Secretary moved to dismiss, arguing that plaintiffs lacked standing to sue her where their claim wrongly imputed to her the conduct of the Montana Legislature that drew the districts. The court rejected the argument, recognizing the Secretary's legal responsibility to administer and enforce the challenged districts established the requisite causal connection for standing purposes.

Similar to the Secretary of State in *Brown*, Defendant Benson's power here to administer and enforce the District maps as well as her power *not* to update the District maps (a power she concedes she has) and *to* take a substantive position (which she has in previous redistricting litigation) satisfies standing and justiciability. As Defendant Benson will have the opportunity to argue the merits of why she has not deprived Plaintiffs of their VRA rights, dismissal at the pleading stage is improper.

8

### 2. Plaintiffs' deprivation of VRA rights can be redressed by Defendant Benson enforcing lawfully redrawn maps.

The deprivation of Plaintiffs' rights under the VRA can be redressed by the Secretary's actions in facilitating and enforcing lawfully redrawn District maps. Further, in the event that this Court orders that District maps be redrawn, and the Commission cannot fulfill its duty and select a lawfully drawn map, Michigan's Constitution mandates the Secretary to choose one. If this Court were to order that the Districts be redrawn and Defendant Benson be dismissed, she could choose to ignore this Court's order as a non-party and implement maps that continue to deprive Plaintiffs of their VRA rights.

Again, it is not enough for Defendant Benson to say she will update the Districts depending on this Court's rulings vis-à-vis the Commission and its members. It is not enough that Plaintiffs must rely on Defendant Benson to do so to fully redress the harm Plaintiffs are suffering.

## CONCLUSION

Plaintiffs have established Defendant Benson's role in depriving them of their rights, particularly at the pleading stage where Defendant Benson oversaw, assisted with, and is now enforcing the unlawful Districts. Defendant Benson is not entitled to be dismissed from this action merely by abstaining from taking a substantive position in this case and stating that she will update the Districts if Plaintiffs prevail. Defendant Benson must be obligated to enforce redrawn Districts, and she must be held accountable. Dismissal at the pleading stage is improper because Defendant Benson will have the chance to argue her position on the merits, which she has done before this Court in similar litigation.

Accordingly, Plaintiffs respectfully request this Court deny Defendant Benson's motion to dismiss.

                                            Respectfully submitted,

Dated: July 12, 2022                       /s/ *John J. Bursch*
                                            John J. Bursch (P57679)
                                            BURSCH LAW PLLC
                                            *Attorney for Plaintiffs*
                                            9339 Cherry Valley Ave SE, #78
                                            Caledonia, Michigan 49316
                                            (616) 450-4235
                                            jbursch@burschlaw.com

                                            Michael J. Pattwell (P72419)
                                            James J. Fleming (P84490)
                                            Amia A. Banks (P84182)
                                            CLARK HILL PLC
                                            *Attorneys for Plaintiffs*
                                            215 South Washington Square, Suite 200
                                            Lansing, MI 48933
                                            (517) 318-3100
                                            mpattwell@clarkhill.com
                                            jfleming@clarkhill.com
                                            abanks@clarkhill.com

                                            Nabih H. Ayad (P59518)
                                            AYAD LAW, PLLC
                                            *Co-counsel for Plaintiffs Agee and Sherard*
                                            645 Griswold St., Suite 2202
                                            Detroit, MI 48226
                                            (313) 983-4600
                                            nabihayad@ayadlawpllc.com

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| DONALD AGEE, JR., an individual, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br><br> JOCELYN BENSON, in her official capacity as the Secretary of State of Michigan, *et al.*; <br><br> Defendants. | Case No. 1:22-cv-00272 <br><br> **Three-Judge Panel Appointed Pursuant to 28 U.S.C. § 2284(a)** |

## CERTIFICATE OF COMPLIANCE

I hereby certify that Plaintiffs' Brief in Opposition to Defendant Secretary of State Jocelyn Benson's Motion to Dismiss complies with the word-count limitations and the local rules of this Court. The brief contains 2,690 words of 12-point type font. The word-processing software used to prepare this brief was Microsoft Word 2019.

Respectfully submitted,

Dated: July 12, 2022

/s/ *John J. Bursch*
John J. Bursch (P57679)
BURSCH LAW PLLC
*Attorney for Plaintiffs*
9339 Cherry Valley Ave SE, #78
Caledonia, Michigan 49316
(616) 450-4235
jbursch@burschlaw.com