**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| DONALD AGEE, JR. et al., | **Case No. 1:22-CV-00272-PLM-RMK-JTN** |
| Plaintiffs, | |
| v. | **COMMISSION DEFENDANTS'** |
| | **OPPOSITION TO MOTION FOR** |
| JOCELYN BENSON, et al., | **LEAVE TO FILE BRIEF OF AMICI** |
| | **CURIAE COMMON CAUSE AND** |
| Defendants. | **PROFESSOR JON E. EGUIA IN** |
| | **SUPPORT OF NEITHER PARTY** |

The Michigan Independent Citizens Redistricting Commission and its Commissioners (collectively, the "Commission") respectfully oppose the motion of Common Cause and Jon X. Eguia to file their proposed amicus brief. The brief attempts to introduce inadmissible expert analysis into the record in the form of a 163-page report containing significant statistical and mathematical analyses. The proper way to bring an expert report before the Court is through the rules of discovery and evidence, not through an amicus brief. In opposition to the motion, the Commission states as follows:

1.      Plaintiffs are Michigan voters who challenge the state house and senate redistricting plans adopted by the Commission in December 2021. *See* ECF No. 8 (First Amended Complaint) ¶¶ 14–40 (PageID.87-108). They assert that the plans are so-called racial gerrymanders that violate the Equal Protection Clause and dilute minority voting strength in violation of Section 2 of the Voting Rights Act. *Id.* ¶¶ 147–212 (PageID.135-151). Contested questions of fact will include whether "race was the predominant factor motivating the [Commission's] decision to place a significant number of voters within or without a particular district," *Lee v. City of Los Angeles*, 908 F.3d 1175, 1182 (9th Cir. 2018) (citation omitted), and whether the minority group is "sufficiently large and geographically compact to constitute a majority in" more "reasonably configured legislative district[s]" than currently exist, *Cooper v. Harris*, 137 S. Ct. 1455, 1470 (2017) (citations and quotation marks omitted).

2.      On August 26, 2022, Common Cause and Prof. Eguia moved to file an amicus brief purportedly "in Support of Neither Party." ECF No. 27 (Motion for Leave) at 1 (PageID.356). The proposed brief relies predominantly on statistical and mathematical analyses contained in a 163-page Michigan State University report that amici identify Prof. Eguia as "the lead author," *id.* at 1, ¶ 2 (PageID.356). The proposed brief represents that "[t]he report's authors collaborated with other data and voting experts, including Professor Moon Duchin's Metric Geometry and Gerrymandering Group (MGGG)." ECF No. 27-2 (Proposed Brief) at 9 (PageID.368). The proposed brief reports that "MGGG randomly generated alternate districting plans through" an algorithm, producing "100,000 maps for each type of districting requirement (House, Senate, and congressional)." *Id.* The proposed brief also reports that all maps are generated "with no consideration given to race" and configured only to meet a tight population-equality standard ("1% of the ideal") and "to respect county boundaries." *Id.* (citation omitted). The proposed brief announces, in bold typeface, that "**[a]lmost all of the 100,000 computer-generated Senate maps featured two majority-Black districts, and close to half contained three**." *Id.* at 10. Because the Senate plan contains no majority-Black districts, the brief deems it "**a significant statistical outlier**." *Id.* at 10 (PageID.369). The proposed brief also offers arguments concerning the Commission's record; the report of its statistical expert, Dr. Lisa Handley; and comments of some Commissioners to suggest that the Section 2 elements are met as to the senate plan and announces that it should be subject to "court scrutiny." *Id.* at 2, 6–17 (PageID.362, 366–77).

3.      "[P]articipation as an amicus to brief and argue as a friend of the court . . . continues to be[] a privilege within 'the sound discretion of the courts,' depending upon a finding that the proffered information of amicus is timely, useful, or otherwise necessary to the administration of justice." *United States v. State of Mich.*, 940 F.2d 143, 165 (6th Cir. 1991) (internal citations omitted). Unlike the Federal Rules of Appellate Procedure, "[t]he Federal Rules of Civil Procedure do not address motions for leave to appear as amicus curiae in a federal district court." *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, No. 1:15-

2

CV-1191, 2017 WL 11454764, at *1 (W.D. Mich. Oct. 30, 2017). "[A]t the trial level, where issues of fact as well as law predominate, the aid of *amicus curiae* may be less appropriate than at the appellate level where such participation has become standard procedure." *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985). "Since the principal function of the district court is resolving issues of fact, district courts should go slow in accepting amicus briefs without the joint consent of the parties unless the amicus has a special interest or unless the court feels existing counsel need assistance." *Tiara Corp. v. Ullenberg Corp.*, No. 87 C 405, 1987 WL 16612, at *2 (N.D. Ill. Sept. 1, 1987). Accordingly, amicus briefs are "rare" in district-court proceedings.[1] *Counts v. Cedarville School Dist.,* 295 F. Supp. 2d 996, 998 (W.D. Ark. 2003).

4.      The Court should exercise its discretion to deny the motion for leave. The proposed amici seek to bring before the Court expert-opinion evidence concerning the facts of this case, in contravention of the rules of evidence. The presentation of such evidence goes beyond the proper role of an amicus curiae and threatens to pollute the record to the prejudice of the Commission.

5.      The proposed expert evidence consists of a highly sophisticated mapping-simulation exercise. But the amici have not established that Prof. Eguia "is qualified as an expert," that the analysis "is based on sufficient facts or data" and "the product of reliable principles of methods," and that "the expert has reliably applied the principles and methods to the facts of the case," Fed. R. Evid. 702(b), (c), and (d). Nor have the amici satisfied the disclosure requirements, including "a complete statement of all opinions the witness will

---

[1] District courts within the Sixth Circuit regularly deny leave to file amicus briefs. *See, e.g.*, *National Air Traffic Controllers Assn. v. Mineta*, No. 99CV1152, 2005 WL 8169395, *2 (N.D. Ohio June 24, 2005); *BancInsure, Inc. v. U.K. Bancorporation, Inc.*, 830 F. Supp. 2d 294, 306 (E.D. Ky. 2011); *Dow Chemical Co. v. United States,* No. 00-CV-10331*, 2002 WL 33012185, *2 (E.D. Mich. May 24, 2002); *Parker v. GKN N. Am. Servs., Inc.*, No. 21-12468, 2022 WL 3702072, at *2 (E.D. Mich. Aug. 26, 2022)*. See also, e.g.*, *Kostas Mechmet v. Four Seasons Hotels, Ltd.*, No. 84 C 7341, 1985 WL 766, *1 (N.D. Il. Apr. 25, 1985); *Jones Day v. Blockshopper LLC*, No. 08 CV 4572, 2008 WL 4925644, *6 (N.D. Il. Nov. 13, 2008); *Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, No. 12 Cv. 7935(ALC)(HBP), 2014 WL 265784, *2 (S.D.N.Y. Jan. 23, 2014).

express and the basis and reasons for them," "the facts of data considered by the witness in forming them," and a "statement of the compensation to be paid for the study and testimony." Fed. R. Civ. P. 26(a)(2)(A) and (B). Nor will the amici or those who prepared the underlying report be subject to depositions and cross examination, *see Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002) (Posner, J.) ("An expert witness is permitted to use assistants in formulating his expert opinion" so long as "[t]he opposing party can depose them").

6.      The proposed amicus brief differs from those that acceptably contain data and analysis because it analyzes the facts of *this* case. The Commission recognizes that some amicus briefs contain data and analysis, some of which may be expert opinion, but this is permissible when it concerns "legislative facts," "which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201, advisory committee's note (1972); *see Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002). Because courts may consider legislative facts without "any limitation" or "formal requirements," Fed. R. Evid. 201, advisory committee's note (1972), courts may consider legislative facts presented by amici.

7.      But the proposed brief here concerns "adjudicative facts," which are "the facts of [this] particular case." Fed. R. Evid. 201, advisory committee's note (1972). The simulation analysis does not bear on the Court's formulation of any legal rule, but rather attempts to show that race predominated the Commission's construction of districts in the enacted senate plan and that the minority community in and around Detroit is sufficiently compact and numerous to support majority-minority districts. *See* ECF No. 27-2 at 10 (PageID.370). The same is true of the brief's contentions about the Commission's expert's analysis and public comments. *Id.* at 8–16 (PageID.368–76). The "method" available to make this type of evidentiary showing is "the introduction of evidence." The information cannot be considered

"useful," *United States v. State of Mich.*, 940 F.2d at 165, when the Court is not permitted to consider it.

8.      Accepting the brief would prejudice the Commission. For one thing, advanced simulation techniques cannot be taken at face value. There are as many ways to generate simulated redistricting plans as there are simulated mapping experts, there is disagreement among experts as to the best approach, the algorithm and inputs are of central significance and may be flawed, and only after careful vetting could the information proposed here be deemed probative. Indeed, the method used here appears not to have used the Commission's redistricting criteria, *see* ECF No. 27-2 at 9–10 (PageID.369–70), and the conclusions of such an analysis cannot be verified by the Commission without hiring its own expert to examine the computer code, simulations model, data, and results of any purported analysis through expert-witness discovery. For another thing, Prof. Eguia, an economics professor, does not appear to have the expertise to run computer mapping simulations, and Dr. Moon Duchin of MGGG appears to have conducted the analysis. ECF No. 27-2 at 9 (PageID.369). Prof. Eguia appears "to be the mouthpiece of a scientist in a different specialty."[2] *Dura Auto.*, 285 F.3d at 614.

9.      Finally, denial of leave would not keep probative information from the evidentiary record. To the extent information known to Common Cause or Prof. Eguia is admissible (which is far from established), nothing prevents them from coordinating with any party to bring that information before the Court through the proper channels. This approach would subject such information to proper disclosure and adversarial scrutiny, as well as limitations the Court may impose (such as limits on the number of expert witnesses). The way the amici have proposed to proceed shortchanges and undermines the judicial process, and the Court should reject that path.

---

[2] An additional complication is that Dr. Duchin performed work on the Commission's behalf during the redistricting. The implications of her taking an apparently adversarial role against the Commission in this case would be another item to address through the proper litigation channels, in due course, not through the back door of an amicus brief.

For these reasons, the Commission respectfully urges the Court deny the motion for leave.

Dated: September 9, 2022

Respectfully submitted,

/s/ David H. Fink

BAKER & HOSTETLER LLP
Katherine L. McKnight
E. Mark Braden
Richard B. Raile
Dima J. Atiya
1050 Connecticut Ave., NW,
Suite 1100
Washington, D.C. 20036
(202) 861-1500
kmcknight@bakerlaw.com
mbraden@bakerlaw.com
rraile@bakerlaw.com
datiya@bakerlaw.com

BAKER & HOSTETLER LLP
Patrick T. Lewis
Key Tower, 127 Public Square,
Suite 2000
Cleveland, Ohio 44114
(216) 621-0200
plewis@bakerlaw.com

FINK BRESSACK
David H. Fink (P28235)
Nathan J. Fink (P75185)
38500 Woodward Ave., Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

*Counsel for Defendants, Michigan Independent Citizens Redistricting Commission, and Douglas Clark, Juanita Curry, Anthony Eid, Rhonda Lange, Steven Terry Lett, Brittni Kellom, Cynthia Orton, M.C. Rothhorn, Rebecca Szetela, Janice Vallette, Erin Wagner, Richard Weiss, and Dustin Witjes, each in his or her official capacity as a Commissioner of the Michigan Independent Citizens Redistricting Commission*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.3(b)(ii), Counsel for the Commission certifies that this document contains 1,775 words, as indicated by Microsoft Word 365, inclusive of any footnotes, citations, and quotations, and exclusive of the caption, signature block, and any certificate.


Dated: September 9, 2022                    /s/ David H. Fink
                                            David H. Fink

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2022, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

/s/ Nathan J. Fink
Nathan J. Fink