## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DONALD AGEE, JR. et al.,

                Plaintiffs,

    v.

JOCELYN BENSON, et al.,

                Defendants.

Case No. 1:22-CV-00272-PLM-RMK-JTN

**BRIEF IN SUPPORT OF THE COMMISSION'S MOTION TO STRIKE "SUPPLEMENTAL AND REBUTTAL" REPORT OF SEAN TRENDE AND IN LIMINE PRECLUDING PLAINTIFFS FROM OFFERING THE REPORT AT TRIAL**

FINK BRESSACK
David H. Fink (P28235)
Nathan J. Fink (P75185)
38500 Woodward Ave., Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

BAKER & HOSTETLER LLP
Patrick T. Lewis
127 Public Square, Suite 2000
Cleveland, Ohio 44114
(216) 621-0200
plewis@bakerlaw.com

BAKER & HOSTETLER LLP
Erika Dackin Prouty
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
(614) 228-1541
eprouty@bakerlaw.com

BAKER & HOSTETLER LLP
Katherine L. McKnight
E. Mark Braden
Richard B. Raile
Dima J. Atiya
1050 Connecticut Ave., NW, Suite 1100
Washington, D.C. 20036
(202) 861-1500
kmcknight@bakerlaw.com
mbraden@bakerlaw.com
rraile@bakerlaw.com
datiya@bakerlaw.com

*Counsel for Defendants, Michigan Independent Citizens Redistricting Commission, and Douglas Clark, Juanita Curry, Anthony Eid, Rhonda Lange, Steven Terry Litt, Brittni Kellom, Cynthia Orton, M.C. Rothhorn, Rebecca Szetela, Janice Vallette, Erin Wagner, Richard Weiss, and Dustin Witjes, each in their official capacities as Commissioners of the Michigan Independent Citizens Redistricting Commission*

## TABLE OF CONTENTS

Table of Authorities...................................................................................................... ii

Introduction ............................................................................................................... 1

Factual Background.................................................................................................... 1

Argument.................................................................................................................... 5

      I.     Mr. Trende's September Report Is Not Permitted By Fed. R. Civ. P. 26 ....... 6

      II.    Plaintiffs Cannot Show That The Untimely Disclosure of The September Report Is Substantially Justified Or Harmless To Avoid Automatic Exclusion Under Fed. R. Civ. P. 37(c)(1). ...................................................10

Conclusion.................................................................................................................14

Certificate of Service................................................................................................15

Certificate of Compliance ........................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akeva L.L.C. v. Mizuno Corp.*,
212 F.R.D. 306 (M.D.N.C. 2002) ...........................................................................9, 13

*Baker v. Chevron U.S.A., Inc.*,
533 Fed. App'x 509 (6th Cir. 2013) ...........................................................................10

*Beller ex rel. Beller v. United States*,
221 F.R.D. 696 (D.N.M. 2003)..............................................................................7, 13

*United States ex rel. Brown v. Celgene Corp.*,
2016 WL 6542730 (C.D. Cal. June 29, 2016) ............................................................ 6

*Covington v. Memphis Publishing Co.*,
No. 05-2474-DV, 2007 WL 9710110 (W.D. Tenn. July 27, 2007) ............................6, 7

*David v. Caterpillar, Inc.*,
324 F. 3d 851 (7th Cir. 2003) .....................................................................................11

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*,
No. 2:18-md-2846, 2020 WL 1154809, ** 5–6 (S.D. Ohio Mar. 10, 2020).................... 8

*Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*,
388 F. 3d 976 (6th Cir. 2004) .....................................................................................11

*Dinsmore & Shohl, LLP v. Gray*,
No. 1:14-cv-900, 2016 WL 11784514 (S.D. Ohio Apr. 5, 2016) ................................8, 9

*In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*,
MDL No. 1909, 2013 WL 587655 (N.D. Ohio Feb. 13, 2013) ....................................10

*Gallagher v. S. Source Packaging, LLC*,
568 F. Supp. 2d 624 (E.D.N.C. 2008) ......................................................................7, 8

*Hous. Auth. of the City of Los Angeles v. PCC Tech. Indus., Inc.*,
No. CV 11-1626 FMO, 2015 WL 13864845, ** 2–3 (C.D. Cal. Mar. 4,
2015) ......................................................................................................................... 7

*Keener v. United States*,
181 F.R.D. 639 (D. Mont. 1998).............................................................................. 7

*King v. Ford Motor Co.*,
209 F. 3d 886 (6th Cir. 2000) .....................................................................................11

*Lujan v. National Wildlife Federation*,
   497 U.S. 871 (1990) ............................................................................................. 10

*McNamee v. Nationstar Mortgage, LLC.*
   No. 14-cv-1948, 2021 WL 4355549 (S.D. Ohio. Sept. 24, 2021) ..................................... 7

*Metro Ford Truck Sales, Inc. v. Ford Motor Co.*,
   145 F. 3d 320 (5th Cir. 1998) ................................................................................. 7

*MicroStrategy, Inc. v. Business Objects, S.A.*,
   429 F. 3d 1344 (Fed. Cir. 2005) ............................................................................. 8

*Mid America Solutions, LLC v. Merhcant Soltions Int'l, Inc.*,
   No. 1:15-cv-563, 2016 WL 7009783 (W.D. Mich. Dec. 1, 2016) ................................. 11

*Nairne v. Ardoin*,
   No. 3:22-cv-178 ................................................................................................. 13

*People v. Kinder Morgan Energy Partners, L.P.*,
   159 F. Supp. 3d 1182 (S.D. Cal. 2016) ..................................................................... 12

*Pluck v. BP Oil Pipeline Co.*,
   640 F. 3d 671 (6th Cir. 2011) .......................................................................... 9, 10

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) ......................................................................................... 4, 5

*R.C. Olmstead, Inc., v. CU Interface, LLC*,
   606 F.3d 262 (6th Cir. 2010) ................................................................................. 14

*In re Ready-Mixed Concrete Antitrust Litig.*,
   261 F.R.D. 154 (S.D. Ind. 2009) ............................................................................. 8

*Rush v. City of Mansfield*,
   No. 1:07cv1068, 2009 WL 454347 (N.D. Ohio Feb. 24, 2009) ..................................... 8

*Saint-Gobain Corp. v. Gemtron Corp.*,
   No. 1:04-cv-387, 2006 WL 1307890 (W.D. Mich. May 9, 2006) ................................. 7

*Solaia Tech., LLC v. ArvinMeritor, Inc.*,
   361 F. Supp. 2d 797 (N.D. Ill. 2005) ....................................................................... 8

*SPX Corp. v. Bartec USA, LLC*,
   574 F. Supp. 2d 748 (E.D. Mich. 2008) .................................................................. 11

*Vance, by and through Hammons v. United States*,
   No. 98-5488, 1999 WL 455435 (6th Cir. 1999) ......................................................... 12

*Walker v. Eagle Press & Equipment Co., Ltd.*,
   No. 03-72850, 2007 WL 907268 (E.D. Mich. Mar. 23, 2007)......................................11

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000).........................................................................................................10

**Statutes**

Voting Rights Act ..................................................................................................................... 3

**Rules**

Fed. R. Civ. P. 26 ...............................................................................................................6, 14

Fed. R. Civ. P. 26(a) ...........................................................................................5, 6, 11, 12,13

Fed. R. Civ. P. 26(e) ..............................................................................................................7, 8

Fed. R. Civ. P. 37(c)(1) ...........................................................................................................10

## INTRODUCTION

On September 26, 2023, Plaintiffs served a "Supplemental and Rebuttal Expert Report" offered by their expert, Sean Trende (the "September Report"), that provided substantial new expert analysis long after discovery closed. The report's untimely delivery is unjustified and prejudicial to the Commission (as defined in the motion). Accordingly, for the reasons that follow, the Commission respectfully moves the Court for an order striking the September Report and for an order *in limine* barring Plaintiffs from offering that report, or opinions contained within, at trial.

## FACTUAL BACKGROUND

1.     Plaintiffs filed this case in March 2022 and filed the operative amended pleading on April 13, 2022. *See* ECF Nos. 1 and 8. This Court entered a case management order on November 1, 2022, ECF No. 38 (the "Scheduling Order"), which afforded the parties five-and-a-half months, until April 14, 2023, for discovery. *Id.* at 1. It set expert-disclosure deadlines of January 18, 2023, for Plaintiffs' disclosures, and March 8, 2023, for Defendants' disclosures. *Id.* The Scheduling Order did not set a deadline for rebuttal reports. It established a dispositive motions deadline of May 5, 2023, with briefing to end by June 16, 2023. *Id.*

Plaintiffs served no discovery requests and took no depositions. They did, however, submit two expert reports on the January 18 deadline, including a 120-page report of elections analyst Sean Trende, accompanied by three appendices and voluminous backup data. *See* Summary Judgment Joint Appendix, ECF No. 71 (SJ Joint App'x), at JA00308, PageId.988 (Trende Rep.). Mr. Trende's report included demonstration house and senate redistricting plans designed to "include reasonably configured districts in the Wayne County area with Black majority VAPs, while reducing township, county and city splits." Trende Rep. 22; *see*

*also id.* at 23–26, 81–84. Mr. Trende also presented polarized-voting analyses focused on Detroit-area Democratic primary elections to determine "whether the Black candidate of choice can emerge victorious from the Democratic primary," *id.* at 27, and those analyses were illustrated with numerous charts depicting primary election results and voter preferences by race, *see id.* at 30–33, 37, 39, 40–42, 84–96. In addition, Mr. Trende presented simulated redistricting plans that purported to show, among other things, that the Commission's plans "cannot be justified by a supposed desire to achieve a political outcome." *Id.* at 111; *see also id.* at 107–118 (Linden), 74–81 (Hickory).

The Commission responded on its expert-disclosure deadline (March 8) with three expert reports, each of which responded to some or all of Mr. Trende's analyses. SJ Joint App'x at JA0001, Report of Lisa Handley, PageID.679; *id.* at JA00116, Report of Maxwell Palmer, PageID.794; *id.* at JA00227, Report of Jonathan Rodden, PageID.905. Plaintiffs did not serve a rebuttal report.

**2.**   Counsel for the Commission deposed Mr. Trende on April 20, 2023. Mr. Trende gave the following testimony that is relevant to this motion:

First, Mr. Trende testified that although he "wanted to prepare a reply report," Ex. A, Excerpts of Deposition of Sean Trende, 16:25–17:1, he did not do so because of his "understanding" that "the scheduling order didn't allow for it," which he based on "[c]onversation with counsel." *Id.* at 16:22–23.

Second, Mr. Trende testified that he did not prepare or check his demonstration plans "with respect to the criteria" of the Michigan constitution. *Id.* at 57:21–24. Mr. Trende simply "ensured that the black populations in all the districts were, in fact, 50 percent plus one" and the plans "had as many or less county and township splits" to ensure compliance with "the

reasonably configured portion of Gingles." *Id.* at 57:2–10. Mr. Trende made clear that he did not "view compliance with the other criteria" of the Michigan constitution "as supporting a finding of a reasonably configured district," reasoning that "if, say, a state wanted to draw a gerrymander, that ... could [not] trump Voting Rights Act conditions." *Id.* at 57:25–58:6.

Third, for similar reasons he "didn't look at the partisan fairness of the demonstration plan," given that its purpose was "to illustrate under Gingles Prong 1 that the African-American community or the black community is numerous enough to constitute a majority in a reasonably configured district," which "would trump the remainder of the requirements." *Id.* at 49:2–14. Nevertheless, Mr. Trende attested that his existing analyses demonstrated that the Commission's partisan-fairness goals did not explain district configurations better than its alleged racial goals. *See, e.g.*, *id.* at 49:15–50:5; 82:3–83:8; 84:9–85:1.

Fourth, Mr. Trende stated repeatedly that his opinions depended upon "an analysis of primary votes" in Democratic Party primary elections. *See, e.g.*, Trende Dep. 28:23–25. Mr. Trende recognized that "primaries" in Michigan legislative races "are tricky to figure out" but maintained that "to throw [one's] hand up and say, we can't really do it for purposes of a primary race" is not "even an option to select." *Id.* at 134:12–18. Mr. Trende also acknowledge that "we don't have" "lots and lots of statewide primary election data" and maintained that his report made use of the limited information available. *Id.* at 146:4–7.

**3.**   On August 29, 2023, after entertaining competing motions for summary judgment, the Court issued an order denying Plaintiffs' summary-judgment motion and granting in part and denying in part the Commission's summary-judgment motion. ECF No. 81. Two days later, the Court issued a case-management order setting trial for November 1, 2023, and attendant pre-trial deadlines. ECF No. 82. Although no party requested this

3

expedited schedule, the Court presumably chose this time frame with an eye toward the forthcoming 2024 elections. *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1 (2006).

**4.**     Nearly a month later, on September 26 (the day the parties' proposed final pretrial order was due), Plaintiffs served a new 35-page expert report by Mr. Trende titled "Supplemental and Rebuttal Expert Report of Sean P. Trende." Ex. B, the September Report. The September Report opens by stating that it "clarifies various aspects of my initial report so as to simplify the issues the Court will be addressing at trial." *Id.* at 2. The September Report then begins each section by identifying what it proposes are critiques the Court's summary-judgment ruling leveled at Plaintiffs' evidentiary showing and proceeding to address them. *See id.* at 2, 5, 12, 23.

First, the September Report addresses "the first issue identified by this Court," which is that Mr. Trende's prior work "fails to 'explain whether his proposed map would place each plaintiff in a majority-minority district.'" *Id.* at 2 (quoting SJ Order at 7). The September Report then provides a new analysis identifying Plaintiff addresses in his demonstration plans. *Id.* at 2–5. No analysis like that was in his original report.

Second, the September Report states that "the Court questions whether the districts" in Mr. Trende's demonstration plans "respected 'communities of interest, partisan fairness, or the effect on incumbents.'" *Id.* at 5 (quoting SJ Order at 7). The September Report then proceeds with a new analysis of partisan fairness and communities of interest—the very types of analyses Mr. Trende asserted in his deposition were unnecessary.

Third, the September Report represents that "[t]he Court also suggested that the evidence produced so far was insufficient to prove *Gingles* Prongs 2 and 3." *Id.* at 12. It notes that "the inquiry is complicated" because "there are no statewide elections featuring a Black

candidate against a White candidate in a Democratic primary" and because "[i]t is unclear what racial 'coherence' looks like in a 15-candidate, low information race," *id.* at 12, which were the same complications Mr. Trende already understood to exist. The September Report then offers a new polarized-voting analysis of primary elections with at least nine new tables. *See id.* at 13–22.

Fourth, the September Report explains that the Court "left open the possibility that ... it is politics, rather than race, that drove the line shapes" in the Commission's plans.[1] September Report 23. The September Report then proceeds with a partisan-fairness analysis of Mr. Trende's demonstration plans (which he previously asserted he did not, and need not, do). And, then, the September Report serves new demonstration plans and performs a partisan-fairness analysis on them. *See id.* at 31–34.

Finally, Plaintiffs failed to produce any of the "facts or data," like replication materials, with the September Report. However, Fed. R. Civ. P. 26(a)(2)(B)(ii) requires that expert reports include disclosure of the "facts and data considered by the witness" that support it.

## ARGUMENT

Discovery closed five-and-a-half months ago—the entire length of the discovery period—and Mr. Trende was deposed around that time on the understanding that the full scope of his testimony had been disclosed. He had the opportunity to tender the information contained in his September Report on the Court's deadlines, and he (and Plaintiffs) made the

---

[1] The sentence excerpted here is drafted incorrectly. It identifies the scenario where "politics, rather than race," predominates as one where "the plaintiffs could prevail on the 14th Amendment claim." September Rep. 23. However, that is a scenario where *the Commission* would prevail.

calculated choice not to do so. The September Report is therefore untimely and improper. And because it is prejudicial, its contents should be excluded from trial.

## I.   MR. TRENDE'S SEPTEMBER REPORT IS NOT PERMITTED BY FED. R. CIV. P. 26

Rule 26 "anticipates that litigants will disclose expert evidence necessary to support their case-in-chief in the initial round of expert disclosures." *United States ex rel. Brown v. Celgene Corp.*, 2016 WL 6542730, at *3 (C.D. Cal. June 29, 2016). Fed. R. Civ. P. 26(a)(2)(B) requires that parties produce, in their expert disclosure for retained experts, "a written expert report" that "contains 'a complete statement of all opinions to be expressed' by the expert and 'the basis and reasons therefor.'" *Covington v. Memphis Publishing Co.*, No. 05-2474-DV, 2007 WL 9710110, *1 (W.D. Tenn. July 27, 2007) (quoting Fed. R. Civ. P. 26(a)(2)(B)), *aff'd*, 2007 WL 4615978 (W.D. Tenn. Oct. 16, 2007). Under this framework, Plaintiffs' expert reports were due January 18, 2023, and Plaintiffs served an expansive expert report from Mr. Trende on that date.

The September Report is untimely. Plaintiffs label it both a "rebuttal" and "supplemental" report, but neither label works.

**A.**    If it is a rebuttal disclosure, it is untimely. This Court's scheduling order did not set a rebuttal-report deadline, so the default deadline of Rule 26(a)(2)(D) applies. *See, e.g.*, *Covington*, 2007 WL 9710110, at *2 (finding the "default provision" applicable where the "scheduling order did not provide any" rebuttal deadline). The default rule renders a rebuttal disclosure is due "within 30 days after the other party's disclosure," Fed. R. Civ. P. 26(a)(2)(D), which in this case was April 7, 2023, *see* Scheduling Order 1. Plaintiffs did not serve a rebuttal report by that date, apparently because they believed rebuttal reports were not permitted, *see* Trende Dep. 16:16–17:4, notwithstanding Fed. R. Civ. P. 26(a)(2)(D) or the

ability to timely move the Court for leave to serve a rebuttal report. Regardless, if a rebuttal report was impermissible by the default deadline, it is not allowed five-and-a-half months later.

**B**.     The September Report also cannot be justified as a "supplemental" report. The obligation to supplement arises "if the party" who served a prior disclosure "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed R. Civ. P. 26(e)(1)(A).  A "supplemental" report "would consist of 'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Covington*, 2007 WL 9710110, at *3 (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)). *See also McNamee v. Nationstar Mortgage, LLC.* No. 14-cv-1948, 2021 WL 4355549, *5 (S.D. Ohio. Sept. 24, 2021). Supplemental disclosures are "not intended to provide an extension of the expert designation and report production deadline." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F. 3d 320, 324 (5th Cir. 1998). Courts carefully police the line between "'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship." *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008). That is because Fed. R. Civ. P. 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003).  *See also, e.g., Saint-Gobain Corp. v. Gemtron Corp.*, No. 1:04-cv-387, 2006 WL 1307890, at *2 (W.D. Mich. May 9, 2006).

Courts readily strike new expert reports that masquerade as rebuttal or supplemental expert reports that in truth are "an attempt to deepen, strengthen or expand existing opinions, which is not allowed under Rule 26(e)." *Hous. Auth. of the City of Los Angeles v. PCC Tech. Indus.,*

*Inc.*, No. CV 11-1626 FMO, 2015 WL 13864845, ** 2–3 (C.D. Cal. Mar. 4, 2015). Courts have "repeatedly rejected attempts … [at] 'supplementing' an expert report with a 'new and improved' expert report." *Gallagher*, 568 F. Supp. 2d at 631. *See also, e.g., MicroStrategy, Inc. v. Business Objects, S.A.*, 429 F. 3d 1344, 1353 (Fed. Cir. 2005) (finding a putative "supplement" to an initial expert report not a "true supplement" where it "contained new opinions and doubled the amount of damages"). Mr. Trende had ample opportunity to offer the opinions in the September Report in a timely manner, and Plaintiffs made the calculated judgment not to do so. Their eleventh-hour attempt to back-fill their case with new expert analysis is not permitted under Rule 26(e). *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 159–161 (S.D. Ind. 2009) (striking "reply" expert report by plaintiffs' expert issued in response to defendant's criticism of expert's opening report, where reply "advance[d] a new price premium analysis … as well as other new analyses … none of which was developed in the original report").

Further, the concept of permissible "supplementation does not cover failures of omission because the expert did an inadequate or incomplete preparation" the first time around. *Rush v. City of Mansfield*, No. 1:07cv1068, 2009 WL 454347, *5 (N.D. Ohio Feb. 24, 2009). *See also, e.g., In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, No. 2:18-md-2846, 2020 WL 1154809, ** 5–6 (S.D. Ohio Mar. 10, 2020) (expert's "effort to cure his woefully deficient testimony, respond to criticisms of his methodology, and to provide new and additional opinions to buttress his claims" was improper supplementation); *Solaia Tech., LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806 (N.D. Ill. 2005) (not "proper role" for supplementation for an expert to issue a "much expanded opinion … prompted solely by [the defendant's] summary judgment motion"); *Dinsmore & Shohl, LLP v. Gray*, No. 1:14-

cv-900, 2016 WL 11784514, at *3 (S.D. Ohio Apr. 5, 2016) (similar); *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (similar).

Mr. Trende's September Report is an attempt to "bolster his deficient opinion by employing a new methodology" after the Court-ordered case deadlines. *Pluck v. BP Oil Pipeline Co.*, 640 F. 3d 671, 681 (6th Cir. 2011). On its face, the September Report offers new analysis in response to critiques Mr. Trende perceived in this Court's summary-judgment opinion. First, he read that opinion to criticize the absence of evidence about where Plaintiffs reside in his demonstration plans, so he provided that information. September Rep. 2–5. It could have been provided in January. Second, Mr. Trende read this Court to fault Plaintiffs for a lack of evidence about how his demonstration plans comply with the Michigan Constitutions' criteria, so he offered an analysis along those lines, *id.* at 5. But Mr. Trende previously testified that the inquiry is irrelevant. Trende Dep. 57:2–24. Third, Mr. Trende attempted to bolster Plaintiffs' showing under the second and third *Gingles* preconditions with new analysis (and nine new tables) in response to the Court's opinion. September Rep. 13–22. But the challenges of Michigan legislative primaries were already known to Mr. Trende, Trende Dep. 134:12–18, and he supposedly crafted his initial report accordingly. Finally, Mr. Trende addressed what he understood to be the Court's opinion that there is a "possibility that … it is politics, rather than race, that drove the line shapes" in the Commission's plans. September Rep. 23. So he purported to analyze the partisan-fairness scores of his demonstration plans, even though he previously admitted he "didn't look at the partisan fairness of the demonstration plan," Trende Dep. 49:2–14. Then, he went further and provided *new demonstration plans*. September Rep. 25, 32–33. Mr. Trende could have provided those plans in his initial report, if he (or Plaintiffs) believed the exercise was relevant.

Each step of the September Report is a "transparent attempt" to bolster expert-opinion "after the weaknesses in" Plaintiffs' evidentiary showing were revealed. *Pluck*, 640 F. 3d at 681. *See also Baker v. Chevron U.S.A., Inc.*, 533 Fed. App'x 509, 520 (6th Cir. 2013) (affirming exclusion because "the untimely Third Report was an obvious attempt to bolster a deficient opinion"); *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, MDL No. 1909, 2013 WL 587655, *7 (N.D. Ohio Feb. 13, 2013) (excluding "supplemental reports the sole purpose of which was to cure deficiencies the Court previously found in the initial reports"). Each of the failings Mr. Trende believes this Court identified arose from purposeful litigation choices. "[A] litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 897 (1990). "It is implausible to suggest ... that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000). But that is what Plaintiffs admit they are doing here, and the Court should reject that attempt as improper and prejudicial.[2]

## II.   PLAINTIFFS CANNOT SHOW THAT THE UNTIMELY DISCLOSURE OF THE SEPTEMBER REPORT IS SUBSTANTIALLY JUSTIFIED OR HARMLESS TO AVOID AUTOMATIC EXCLUSION UNDER FED. R. CIV. P. 37(C)(1).

The orderly presentation of expert evidence is essential to allow for proceedings free from unfair surprise.  Courts enforce this principle, in part, through Fed. R. Civ. P. 37(c)(1),

---

[2] In an October 3, 2023, email, Plaintiffs' counsel characterized the September Report as "demonstrative and summary graphics that merely rearrange or summarize facts already published in [Mr. Trende's] initial report." Exhibit C. That explanation lacks credibility, as the September Report states it is responding to the Court's criticisms and contains new demonstrative plans, analyses Mr. Trende expressly testified were irrelevant, and information (like Plaintiffs' addresses) clearly outside the scope of his opening report. The September Report is labeled "rebuttal" and "supplemental" for a reason—which is that it is not a mere rearrangement or summarizing of facts already disclosed.

pursuant to which a party's failure without "substantial justification" to timely disclose information required by Fed. R. Civ. P. 26(a) or 26(e) results in the automatic exclusion of such information at trial, unless the failure is "harmless." *See Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F. 3d 976, 983 (6th Cir. 2004); *King v. Ford Motor Co.*, 209 F. 3d 886, 900–01 (6th Cir. 2000).

The factors that guide a court's analysis as to whether a failure is substantially justified or harmless include: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Walker v. Eagle Press & Equipment Co., Ltd.,* No. 03-72850, 2007 WL 907268, *7 (E.D. Mich. Mar. 23, 2007) (quoting *David v. Caterpillar, Inc.,* 324 F. 3d 851, 857 (7th Cir. 2003)). It is Plaintiffs' burden, as the "non-moving party," to "show that the non-disclosure was harmless or substantially justified." *Mid America Solutions, LLC v. Merhcant Soltions Int'l, Inc.*, No. 1:15-cv-563, 2016 WL 7009783, *5 (W.D. Mich. Dec. 1, 2016) (citing *SPX Corp. v. Bartec USA, LLC,* 574 F. Supp. 2d 748, 755–57 (E.D. Mich. 2008)). Plaintiffs cannot meet their burden to show their untimely disclosure was substantially justified or harmless.

**A.**     There was no good-faith reason why Mr. Trende's new opinions could not have been disclosed *prior* to the close of discovery. No data needed to render Mr. Trende's new opinions was withheld by the Commission or otherwise unavailable to Plaintiffs during the discovery period. Rather, Mr. Trende testified in his deposition that while he wanted to draft a second report, Plaintiffs' counsel informed him that he was not "allow[ed]" to submit a new report. Trende Dep. 16:22–23. Moreover, as described, Mr. Trende's choices were deliberate, and his September Report is an episode of buyer's remorse. Plaintiffs later changed their legal

11

position, but the result of this eleventh hour about-face was to sandbag the Commission with the expansive new September Report just *five weeks* prior to trial. That is not good faith or substantial justification under any reasonable definition.

     **B.**     Nor is Plaintiffs' new report harmless. "When a party fails to ... provide the [expert] disclosures required by Rule 26(a)(2) in accordance with the court's scheduling order, '[d]isruption to the schedule of the court and other parties in that manner is not harmless.'" *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1193 (S.D. Cal. 2016) (striking untimely report that was "essential to proving the [plaintiffs'] case-in-chief" where plaintiffs served the report on the defendant "at the last possible moment" in the discovery schedule). Here, as noted *supra*, Mr. Trende testified that he regarded communities-of-interest and partisan-fairness as irrelevant analyses to perform on his demonstration plans; his new report sets forth expansive and previously undisclosed opinions on these and other topics, to the Commission's considerable surprise. *See Vance, by and through Hammons v. United States*, No. 98-5488, 1999 WL 455435, *5 (6th Cir. 1999) (unreported) (holding untimely disclosure was not "harmless" where "the defendant did not know th[e] other opinions the expert would state until the supplement was filed").

     It is no defense for Plaintiffs to argue that the Court could cure any harm flowing from their tardy report by re-opening discovery (which closed several months ago), to make Mr. Trende available for a second deposition, and to allow the Commission's experts to fully analyze his new report and prepare new rebuttal reports before trial begins. Such efforts amount to a tit-for-tat expert arms race that leads to more and more expert evidence, significantly greater cost, and disorder—the exact opposite of an orderly system of discovery that promotes efficiency and allows trials to be decided on the merits, not by ambush. *See, e.g.*,

*Akeva L.L.C.*, 212 F.R.D. at 310 ("To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc [on] docket control and amount to unlimited expert opinion preparation."); *Beller*, 221 F.R.D. at 695 (holding that to permit a party to avoid summary judgment through an untimely supplemental expert report "would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given").

Moreover, this Court expedited trial in this case. Counsel for the Commission are preparing for trial under difficult conditions, given scheduling conflicts in other matters.[3] And the Commission's experts are also preparing for trial on an expedited basis and are not in an optimal position to provide new analyses. And they should not have to, given that the Commission's reports were due last March.

**C.**    It would also be incredibly disruptive to the litigants and the trial calendar to re-open discovery, potentially resulting in *more* expert reports and *more* depositions, with under 30 days to go before trial in a case where Plaintiffs identified over 20 witnesses. ECF No. 85. That course of action would impose a substantial and asymmetric burden on the Commission, its experts, and its counsel, in the final phases of trial preparation. As a member of this Three-Judge Panel explained in an opinion affirming the striking of a party's expert report for failing to comply with Rule 26(a)(2)(B), it is not fair to force the Commission (the non-offending party) to bear that burden:

> Every violation of the Rules has consequences; the question is who will bear them. Too often the consequences are borne only by the innocent party, who must live with the violation (here, a useless report) or else pay to brief and argue

---

[3] The Commission's lead counsel will be trying *Nairne v. Ardoin*, No. 3:22-cv-178, in the Middle District of Louisiana for two weeks commencing November 27, 2023.

a motion to compel the offending party to do what the Rules required it to do all along. Better instead to make the offending party pay a price, and thereby also to remind others that they, too, should comply the first time.

*R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 277–78 (6th Cir. 2010) (Kethledge, J.

concurring). The Commission respectfully submits that neither it, nor the voters of Michigan

(who must live with the results of this litigation), should not have to pay the price for Plaintiffs'

noncompliance with Rule 26 and the Court's Scheduling Order.

## CONCLUSION

For the foregoing reasons, the Court should enter an order striking the September

Report and an order *in limine* precluding Plaintiffs from offering the September Report, or the

opinions or analysis contained within it, at trial or otherwise.

Dated: October 4, 2023

Respectfully submitted,

/s/ Nathan J. Fink
FINK BRESSACK
David H. Fink (P28235)
Nathan J. Fink (P75185)
38500 Woodward Ave., Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

/s/ Patrick T. Lewis
BAKER & HOSTETLER LLP
Katherine L. McKnight
E. Mark Braden
Richard B. Raile
Dima J. Atiya
1050 Connecticut Ave., NW, Suite 1100
Washington, D.C. 20036
(202) 861-1500
kmcknight@bakerlaw.com
mbraden@bakerlaw.com
rraile@bakerlaw.com
datiya@bakerlaw.com

BAKER & HOSTETLER LLP
Patrick T. Lewis
127 Public Square, Suite 2000
Cleveland, Ohio 44114
(216) 621-0200
plewis@bakerlaw.com

BAKER & HOSTETLER LLP
Erika Dackin Prouty
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
(614) 228-1541
eprouty@bakerlaw.com

*Counsel for Defendants, Michigan Independent Citizens Redistricting Commission, and Douglas Clark, Juanita Curry, Anthony Eid, Rhonda Lange, Steven Terry Litt, Brittni Kellom, Cynthia Orton, M.C. Rothhorn, Rebecca Szetela, Janice Vallette, Erin Wagner, Richard Weiss, and Dustin Witjes, each in their official capacities as Commissioners of the Michigan Independent Citizens Redistricting Commission*

### CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2023, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

/s/ Nathan J. Fink
Nathan J. Fink

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to W.D. Mich LCivR 7.3(b), that excluding the portions of this Brief not included in the word count pursuant to the rule, this Brief numbers 4,276 words. The Brief was drafted using Microsoft Word (Office 365, Version 2302) and counsel relied on this software to generate the word count.

/s/ Nathan J. Fink
Nathan J. Fink