## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| DONALD AGEE, JR., an individual, *et al.,* | Case No. 1:22-cv-00272 |
| Plaintiffs, | **Three-Judge Panel Appointed Pursuant to 28 U.S.C. § 2284(a)** |
| v. | **ORAL ARGUMENT REQUESTED** |
| JOCELYN BENSON, in her official capacity as the Secretary of State of Michigan, *et al.*; | |
| Defendants. | |

## PLAINTIFFS' BREIF OPPOSING DEFENDANTS' MOTION TO STRIKE CERTAIN EVIDENCE

### INTRODUCTION

The Court should accept and consider the single exhibit attached to Plaintiffs' post-trial brief (Tab 1, PageID.4447-68) and the several exhibits attached to Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Exs. A – G, PageID.3950-90). Those exhibits (1) include records from Commission proceedings that Defendants have already stipulated are part of the trial record, (2) also include documents that are publicly available and judicially noticeable such that Plaintiffs could have referenced them with a hyperlink, (3) were already previously identified by Plaintiffs to Defendants, (4) have been in Defendants' possession, or (5) some combination of these. There is nothing improper about the Court's consideration of any of the documents.

Although Defendants did not ask for any relief with respect to the length of Plaintiffs' post-trial brief and Proposed Findings of Fact and Conclusions of Law, Plaintiffs reject Defendants' suggestion that these documents were somehow improper. The Court specifically ordered a post-trial brief of no more than 10,000 words ("10,000 words"; Trial.Tr.V.258, PageID.3508), and Plaintiffs complied with that limit (Certificate of Compliance, PageID.4473). The Court separately asked for Proposed Findings of Fact and Conclusions of Law and did not set a word limit. Minutes of Final Conference, PageID.2176, ("trial briefs and proposed findings of fact and conclusions of law to be submitted post-trial"); Order Amending Case Management Order, PageID.2300, ("Proposed Findings of Fact and Conclusions of Law after trial shall be submitted to the Panel no later than December 4, 2023."). Plaintiffs requested that the parties submit pre-trial briefing that would have allowed Plaintiffs to highlight critical evidence regarding the Commission's map-drawing proceedings, which has been in the Commission's possession this entire time. But Defendants objected, and the Court acquiesced. Those transcripts make up 90%+ of Plaintiffs' Proposed Findings of Fact and should obviously be considered. Notably, Defendants' trial testimony and post-trial brief are wholly devoid of references to the Commission hearing transcripts.

Finally, the Commission violated the spirit of this Court's requirement that parties seek concurrence before filing a motion, and the motion should be denied for that reason alone. Defendants sought concurrence in their motion from Plaintiffs via email on Friday, December 8, 2023, at 4:34 PM, less than half-an-hour before the

2

close of business before the weekend. Concurrence Request, p. 2, **Exhibit A**. Plaintiffs responded in just over an hour, at 5:41 PM, requesting that Defendants notify the Court that "Plaintiffs do not concur in Defendants' motion because (1) some of the exhibits are public documents available to anyone with an Internet connection, (2) some are part of the Commission's record (all of which was stipulated into admission), and (3) some are Commission documents that contradict testimony given under oath by Defendants' primary lay witnesses." *Id*. But Defendants had already filed their motion at 5:39 PM. *Id*. at 1. And though Defendants filed an amended certificate, they failed to include Plaintiffs' requested language.

Had Defendants followed the spirit of the Court's concurrence-request rule, perhaps the parties could have worked out some of their differences over some of the attachments, such as the propriety of citing publicly available and judicially noticeable election results referred to in Dr. Handley's cross-exam, of the publicly available and judicially noticeable MIRS article in which Mr. Eid (again) violated his promise not to discuss Commission work in his individual capacity and frankly conceded that the Commission predominately used race to draw district lines, and of the numerous documents that were part of the Commission's public record that Defendants had stipulated were part of these proceedings.

Regardless, Defendants' motion should be denied because Plaintiffs have not submitted any improper documents as part of the post-trial briefing.

## ARGUMENT

**I.**  **The Court can take judicial notice of relevant election results.**

Defendants seek to strike a simple printout of Michigan's general election results for Wayne and Oakland counties. Dr. Handley answered numerous questions about the election results on cross-examination. Trial.Tr.V.38-45, PageID.3288-3295. Plaintiffs had to provide this public information because—despite having purportedly analyzed the data—Dr. Handley could not herself testify as to the winning candidates in the 13 general elections highlighted in her own September 2021 report. Trial.Tr.V.41-45, PageID.3291-3295.

After Dr. Handley admitted that she did not know the results, Plaintiffs' counsel stated "[a]nd because you're not aware of who prevailed in any of these elections in Wayne County, I will represent to you now *and prove in our supplemental briefing at the conclusion of this trial* that in all 13 of these races the black candidate of choice prevailed in Wayne County." Trial.Tr.V.45, Page.ID.3295 (emphasis added). Plaintiffs did precisely that in Tab 1 of their Post-Trial Brief in accordance with the judicial notice rule. PageID.4447-4468. And those results show that based on the general elections Dr. Handley studied, the Black candidate of choice always prevailed in Wayne County (13 out of 13 times) and nearly always prevailed in Oakland County (10 out of 13 times, excepting three statewide elections involving popular incumbents). That means the Commission had no evidentiary basis to believe that *Gingles* factors two and three were satisfied, and therefore no basis to use race in drawing maps.

A court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known....; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). A court can "take judicial notice on its own" and it "*must* take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(1)-(2) (emphasis added).  "[E]lection results are an appropriate subject of judicial notice" because a "vote tally is a public record." *Krupa v. Quinn*, 596 F.Supp.3d 1127, 1134 n.2 (N.D.Ill., 2022). *Accord Badillo v. City of Stockton*, 956 F.2d 884, 887 n.1 (9th Cir. 1992) (same).

"The court may take judicial notice at any stage in the proceeding"—whether before trial, during trial, or after—even as late as on appeal. Fed. R. Civ. P. 201(d); *Loftus v. F.D.I.C.*, 989 F.Supp.2d 483, 490 (D.S.C., 2013) ("Under Rule 201(d), a court may take judicial notice of a fact at any stage in the proceeding, even for the first time on appeal."); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999) (court can take judicial notice during motion to dismiss under Rule 12(b)(6));  *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 205 (3rd Cir. 1995) ("Judicial notice may be taken at any stage of the proceeding … including on appeal… as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority").

 Plaintiffs should not be penalized for trying to make it more convenient for the Court to review this public information rather than simply providing a hyperlink to the Wayne County and Oakland County clerks' election records. Accordingly, there is no basis to strike Tab 1 of Plaintiffs' post-trial brief.

CLARKHILL\L1503\442579\274825935.v4-12/14/23

## II. All exhibits attached to Plaintiffs' Proposed Findings of Facts and Conclusions of Law are part of the Commission's public record or otherwise proper.

### A. Exhibits A, B, C, E, F, and G are all part of the stipulated record.

Defendants ask the Court to strike exhibits A through G, which are all part of the Commission's proceedings. Defendants have repeatedly stipulated to the admission of those proceedings for purposes of trial.

First, in the October 17, 2022, Joint Status Report. "The parties have agreed to make available the following documents without the need of a formal request for production: Bates-labeled version of the transcripts of the meetings of the Defendant Michigan Independent Citizens Redistricting Commission from September 2020 to December 2021 . . . [t]o the extent that any public record associated with Defendant[s]' [ ] redistricting is not accessible to Plaintiffs via the Commission's website at https://www.michigan.gov/micrc or other websites[.]" PageID.498.

Throughout Plaintiffs' Exhibit List contained in the Final Pretrial Order, Defendants repeatedly stipulate to its record. ("Commission will stipulate to admission of entire Commission record of proceedings."). PageID.2191-2197. And Plaintiffs designated numerous Exhibits in that list that accurately describe Exhibits A through G: "All Written Public Comment, Meeting Materials, and Affiliated Documents in All Referenced MICRC Meetings". PageID.2201.

Notably, Defendants objected to Plaintiffs' request to submit a pre-trial briefing that detailed and examined the Commission's public record. The reasoning? Because the Commission agreed to stipulate to the entire record of its proceedings as

admissible in these trial proceedings.  Indeed, after Plaintiffs initially objected to certain manipulable Excel files Defendants presented at trial, Defendants opposed that objection because the Excel files were a public record, "available on the Commission's website." Trial.Tr.V.228, PageID.3478.

At the close of trial, the Court itself inquired to confirm that the panel would be able "to get access to the entirety of the Commission record," and that while the Court "appreciate[s] the status of the [Commission's] website, you can't get to everything on the website and we're interested in making sure we have the entire record."  Trial.Tr.VI.7., PageID.3009 (emphasis added).  Mr. Eid summarized the Commission's position previous to this motion. "I would say to check the record. I mean, the record is clear." Trial.Tr.Vol.III.285, PageID.2876.

CLARKHILL\L1503\442579\274825935.v4-12/14/23

Exhibits A[1] B[2], C[3], E[4], F[5], G[6] are all part of the stipulated public record and remain publicly available on the Commission's website. Accordingly, there was nothing improper about Plaintiffs appending them to its post-trial brief.

### B.   Exhibit D and the NDAs are part of the public record and impeachment evidence.

The Commission objects to the submission of Exhibit D, which contains Non-Disclosure Agreements (NDAs) executed by Mr. Adelson and Mr. Eid. But as described, the Commission has stipulated repeatedly to "admission of entire

---

[1] See March 30, 2021, Meeting Materials. https://www.michigan.gov/micrc/-/media/Project/Websites/MiCRC/MISC3/Ranking_and_Rationale_for_VRA_Legal_Counsel_2021_03_26.pdf?rev=7d0cf52e7f0d49b8a1cef9290948c0dc&hash=94B5EE57C85733BE5D03DD881FD88E08

[2] See April 22, 2021 Meeting Materials. https://www.michigan.gov/micrc/-/media/Project/Websites/MiCRC/MISC4/MICRC_Communities_of_Interest_Process.pdf?rev=0bb04d0437204cae9cd7b781d58acf8d&hash=39D414B0FFE9E013503E6E0C840E0C25

[3] https://www.michigan.gov/micrc/-/media/Project/Websites/MiCRC/MISC6/Public-Records-List-FINAL.pdf?rev=4c298c588aed475487bad72bda7c81e2&hash=B7BD8564AD2F457687C21F230EEAE9F1

[4] https://www.michigan.gov/micrc/-/media/Project/Websites/MiCRC/MISC6/Public-Records-List-FINAL.pdf?rev=4c298c588aed475487bad72bda7c81e2&hash=B7BD8564AD2F457687C21F230EEAE9F1

[5] https://www.michigan.gov/micrc/-/media/Project/Websites/MiCRC/MISC6/Public-Records-List-FINAL.pdf?rev=4c298c588aed475487bad72bda7c81e2&hash=B7BD8564AD2F457687C21F230EEAE9F1

[6] https://www.michigan.gov/micrc/-/media/Project/Websites/MiCRC/MISC6/Public-Records-List-FINAL.pdf?rev=4c298c588aed475487bad72bda7c81e2&hash=B7BD8564AD2F457687C21F230EEAE9F1

Commission record of proceedings." PageID.2191-2197. And that includes these documents.

The Commission wrongly withheld the NDAs from the public record (and the Plaintiffs) and cannot benefit from its own wrongdoing.  While the Commission faults the Plaintiffs for not identifying these documents on its initial disclosures or its Exhibit List, Plaintiffs had no way of knowing these documents existed because they were not in their possession and were never posted on the Commission's website. And they should have been, as they part of the Commission's "entire" proceedings. Defendants' failure to disclose was contrary to (i) the Opinion of the Michigan Attorney General,[7] (ii) Rule 13.1(C) of the Commission's own Policies and Procedures[8]; (iii) a constitutional mandate to make all materials public and post them on the Commission website,[9] and (iv) a Michigan Supreme Court opinion finding that

---

[7] 1 OAG, 2021, No. 7317 (November 22, 2021). https://www.ag.state.mi.us/opinion/datafiles/2020s/op10396.htm

[8] Rules of Procedure of the State of Michigan Independent Citizens Redistricting Commission, https://www.michigan.gov/micrc/-/media/Project/Websites/MiCRC/MISC6/MICRC-Rules-of-Procedure-ADOPTED-2022-04-28-as-amended.pdf?rev=fbbf2345656d440b80fb4b9aaab365a9&hash=771EB2027E9716ED12D37E91C206E2B8

[9] Transparency is not just a goal, it is a constitutional mandate. The Commission is required to (i) "hold at least at least ten *public hearings* throughout the state" before any redistricting plans are drafted "for the purpose of *informing the public* about the redistricting process,"(ii)  "*publish* the proposed redistricting plans *and any data and supporting materials* used to develop the plans" and "[t]he commission shall *conduct all of its business at open meetings*." Mich. Const. 1963 Art. IV, §6(8)-(10) (emphasis added).

the materials discussed during the closed door session were not privileged and had to be disclosed to the public.[10]

Plaintiffs produced Mr. Adelson's signed NDA. Yet he testified during trial he *did not sign* and had no knowledge of this document:



Trial.Tr.Vol.IV.7, PageID.3009.

---

[10] See e.g., *Detroit News, Inc. v. Independent Citizens Redistricting Commission,* 976 N.W.2d 612, 629–30, 508 Mich. 399, 430–31 (Mich., 2021).

CLARKHILL\L1503\442579\274825935.v4-12/14/23

57

```
 1   session meeting during this trial, haven't we?
 2   A.   Yes, we have heard excerpts of that.
 3   Q.   Okay.  We'll come back to those in a moment.  You
 4   testified earlier today that you didn't sign any
 5   non-disclosure agreements?
 6   A.   I don't recall doing that.
 7   Q.   Were you listed as a party to the non-disclosure
 8   agreements?
 9   A.   I have no idea.
10   Q.   So, if I asked the Commission to produce those NDAs -- I
11   just learned about them during Chair Szetela's testimony --
12   you don't know whether your name would appear on them?
13   A.   I have no idea.
14   Q.   You also testified you didn't encourage the commissioners
15   to sign the NDAs; is that correct?
16   A.   I don't remember doing that at all.
```

Trial.Tr.Vol.IV.57, PageID.3059.

Prior to trial, it was unknown that the NDAs documents existed. During the public meeting on the date of the closed session, the Commission stated that "[n]o actions will be taken in the closed session and only the contents of the cited attorney/client privilege legal memoranda will be discussed." See DTX049, MICRC_00874. At the Closed Meeting, the NDAs were discussed as shown in the transcript. PageID.4570-4572.

```
24        MS. PASTULA:  So I will start.  Thank you,
25     Madam Chair.  So I will start.  Again, stating for the
```

scheduling@fortzlegal.com          fortzlegal.com          Toll Free: 844.730.4066

---

MICHIGAN INDEPENDENT CITIZENS REDISTRICTING COMMISSION          Job 27452
TRANSCRIPTION, AUDIO 10/27/2021          4

```
 1        record and the closed session minutes that the closed
 2        session is called in accordance with Section 8H of the
 3        Open Meetings Act being MCL 15.268H.  The session was
 4        called to occur on Wednesday, October 27th, upon adoption
 5        of the resolution and the closed session was called to
 6        order at 4:05 p.m. to discuss the privilege and
 7        confidential memos being Voting Rights Act of October
 8        14th, 2021 and the history of discrimination in the state
 9        of Michigan and its influence on voting of October 26th,
10        '21.  These memos are both attorney-client privileged
11        communications that provide legal advice to the client,
12        prepared by counsel in regard to the Voting Rights Act and
13        are therefore exempt from disclosure under Section 13G of
14        the Michigan Freedom of Information Act being MCL 15.243,
15        subpart 1, subsection G.
16             The rules for closed sessions are that the
17        confidentiality of the closed session, none of the
18        discussion topics or documents may be shared outside of
19        this room.  Everyone received the confidentiality
20        agreement, that if you have not returned to either Sue Ann
21        or myself, please do so.  The rules, additionally, that
22        the topic of the closed session can only be the Voting
23        Rights Act based on the two memoranda that are the basis
24        for this closed session.  If the topic veers off of this
25        course, I will provide a warning.  If the conversation
```

scheduling@fortzlegal.com          fortzlegal.com          Toll Free: 844.730.4066

---

```
 1        does not cease immediately, the closed session will be
 2        halted and we will return to open session at that time.
 3        If you have any questions about either of these two
 4        things, I know this is our first closed session.  So
 5        again, we're here to talk about the VRA.  We're here to
 6        have an open conversation between the MICRC and its
 7        attorneys about the VRA, and with all that being said,
 8        I'll turn it over to Bruce.
 9             MR. ADELSON:  Thank you. And thank you for the
10        opportunity to have this meeting.  Julieann and I thought
11        that it was important with the -- as a result of the
12        memos, the information that's being discussed in the
13        conventional media, on social media and everywhere to
14        answer questions, provide some advice about a path forward
15        and discuss what the Voting Rights Act actually requires.
16        And let's start with that.
```

12

Defendants do not get to benefit from its own constitutional violation and unclean hands in not producing the NDAs.

**C.      Plaintiffs were not obligated to disclose the disputed documents as part of their Initial Disclosures or otherwise.**

Defendants fault Plaintiffs for not conducting discovery or otherwise producing the attached exhibits in their supplement to their Initial Disclosures. But there should not have been a need to conduct discovery because all the Commission's records were already stipulated to be part of the trial record and supposed to already be publicly available on the Commission's website.

Initial disclosures must be supplemented ""in a timely manner . . . if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26 (e)(1)(A). Rule 26(e) does not provide a precise date or set a specific time frame for when supplementation must occur. See *Fair Isaac Corporation v. Federal Insurance Company*, 337 F.R.D. 413, 419, 108 Fed. R. Serv. 3d 1170 (D. Minn. 2021) ("timeliness is not measured by a particular date or event; rather, timeliness means without undue delay upon discovering the information that is to be provided"); see also 1 Steven S. Gensler & Lumen N. Mulligan, Federal Rules of Civil Procedure, Rules and Commentary Rule 26 (Feb. 2022 Update).

Defendants failed to disclose or make public the NDAs as required, and Defendants cannot benefit from that wrongful withholding. What's more, Plaintiffs did identify the NDAs and other exhibits in their Initial Disclosures by identifying the "Commission's complete administrative file complied in connection with

13

Constitutional redistricting mandate" as additional documents not in their possession and in the possession of the Commission. Plaintiffs' Initial Disclosures, **Exhibit B**, p. 25. Defendants also identified "other materials from the Commission's public records relating to the 2021 redistricting process" in their possession. Defendants' Initial Disclosures, **Exhibit C**, p.6.  This includes all the exhibits at-issue, including the NDAs that were never disclosed.

The NDAs and the MIRS article (Exhibit G) are also impeachment evidence. The signed NDAs directly contradict Mr. Adelson's testimony and at minimum call Mr. Eid's testimony into question. (Mr. Eid testified that he could not recall being asked to an NDA. Trial.Tr.Vol.III.157-158, PageID.2948-2949.) The MIRS article is a public document the Commission produced on its website and likewise directly contradicts Mr. Eid's testimony about racial targets.

Such impeachment did not need to be disclosed or identified prior to trial. The Case Management Order stated that "exhibits expected solely for impeachment purposes need not be numbered or listed until identified at trial." Order, PageID.2045. And again, the NDAs only came into Plaintiffs' possession after trial because Defendants failed to disclose them ahead of time. Any objections to non-impeachment exhibits are since waived, per the Case Management Order. "Objections not contained in the Pretrial Order. . . shall be deemed waived except for good cause shown." PageID.2045-46. Defendants' unclean hands cannot be to their benefit.

CLARKHILL\L1503\442579\274825935.v4-12/14/23

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety. This Court, Detroit Black voters, and the People of Michigan deserve transparency.

Respectfully submitted,

*/s/ John J. Bursch*
John J. Bursch (P57679)
BURSCH LAW PLLC
*Attorney for Plaintiffs*
9339 Cherry Valley Ave SE, #78
Caledonia, Michigan 49316
(616) 450-4235
jbursch@burschlaw.com

Michael J. Pattwell (P72419)
Jennifer K. Green (P69019)
James J. Fleming (P84490)
Amia A. Banks (P84182)
CLARK HILL PLC
*Attorneys for Plaintiffs*
215 S. Washington Sq., Ste. 200
Lansing, MI 48933
(517) 318-3100
mpattwell@clarkhill.com
jgreen@clarkhill.com
jfleming@clarkhill.com
abanks@clarkhill.com

Dated: December 14, 2023