# EXHIBIT H

# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Friday the 19th day of November, 2021.*

Present:  All the Justices

In Re: Decennial Redistricting Pursuant to
The Constitution of Virginia, art. II, §§ 6 to 6-A,
and Virginia Code § 30-399

## REDISTRICTING APPOINTMENT ORDER

Pursuant to Article II, Sections 6 and 6-A of the Constitution of Virginia and Code § 30-399(F), the Court unanimously appoints Sean P. Trende and Bernard N. Grofman to serve as Special Masters for the preparation of proposed redistricting maps for the General Assembly of Virginia.  Though each was nominated by legislative leaders of a particular political party, the nominees — upon being appointed by this Court as Special Masters — shall serve as officers of the Court in a quasi-judicial capacity.  Consequently, the Special Masters shall be neutral and shall not act as advocates or representatives of any political party.  By accepting their appointment, the Special Masters warrant that they have no "conflicts of interest," Code § 30-399(F), that preclude them from prudently exercising independent judgment, dispassionately following the Court's instructions, or objectively applying the governing decision-making criteria.

I.

Pursuant to Code § 30-399(F), the Special Masters "shall work together to develop any plan to be submitted to the Court for its consideration."  The Court directs the Special Masters to confer among themselves to propose a single redistricting map for the Virginia House of Delegates, a single redistricting map for the Senate of Virginia, and a single redistricting map for

Virginia's representatives to the United States House of Representatives.  Any disputes between the Special Masters must be resolved by good-faith efforts to find a compromise consistent with governing legal requirements.  The Court orders the Special Masters to present the proposed maps to the Court as soon as reasonably practicable but in no event later than 30 days from the date of this Redistricting Appointment Order.

The Special Masters must not consult with any political parties, partisan organizations, outside experts, or any other person or entity except for their personal support staff, the Justices of this Court and their designated staff, the Executive Secretary and designated employees of the Office of the Executive Secretary, the Clerk of Court, and three individuals employed by the Virginia Division of Legislative Services as permitted by Code § 30-399(D).  The three employees of the Virginia Division of Legislative Services are Amigo R. Wade, Julie L. Smith, and Margaret E. Lamb, provided each of these employees first signs an Oath of Confidentiality and returns it to the Clerk of Court.  The Special Masters, however, may review (and are encouraged to review) comments submitted by any entity or person to the Court's public comment email address, redistricting@vacourts.gov.

## II.

In preparing the proposed redistricting maps, the Special Masters must fully comply with federal and state law in the following order of precedence:

- The United States Constitution, particularly Article I, Section 2, and the Equal Protection Clause of the Fourteenth Amendment;
- Applicable federal statutes, particularly the Voting Rights Act of 1965, 52 U.S.C. § 10301;
- The Constitution of Virginia, particularly Article II, Sections 6 to 6-A;
- Applicable Virginia statutes, particularly Code §§ 30-399(E), 24.2-304.04, and any other relevant provision in Chapter 3 of Title 24.2 of the Code of Virginia.

2

In short, the Court expects to receive from its Special Masters redistricting maps that have been drafted using factors that are fully compliant with constitutional and statutory law applied in an apolitical and nonpartisan manner.

III.

Each Special Master may accept his appointment by promptly executing an engagement agreement with this Court's Office of the Executive Secretary.  The failure to do so will constitute a declination of the appointment.

The Clerk of Court is directed to forward this Redistricting Appointment Order to the Reporter of Decisions for publication in the Virginia Reports.

It is so ORDERED.


_____(SEAL)

Chief Justice of the Supreme Court of Virginia

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BOBBY SINGLETON,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1291-AMM** |
| | ) | |
| **JOHN H. MERRILL,** *in his official capacity as Alabama Secretary of State,* *et al.,* | ) ) ) | **THREE-JUDGE COURT** |
| | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **EVAN MILLIGAN,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1530-AMM** |
| | ) | |
| **JOHN H. MERRILL,** *in his official capacity as Secretary of State of Alabama,* *et al.,* | ) ) ) | **THREE-JUDGE COURT** |
| | ) | |
| **Defendants.** | ) | |

Before MARCUS, Circuit Judge, MANASCO and MOORER, District Judges.

BY THE COURT:

## ORDER APPOINTING SPECIAL MASTER AND APPOINTING EXPERT CARTOGRAPHER

On January 24, 2022, this three-judge court issued a preliminary injunction barring one of the Defendants in these cases, Alabama Secretary of State John H. Merrill, from conducting congressional elections according to Alabama's 2021 redistricting plan for its seven seats in the United States House of Representatives ("the Plan"). We concluded that the *Milligan* plaintiffs are substantially likely to establish that the Plan violates Section Two of the Voting Rights Act of 1965, 52 U.S.C. § 10301. We also stayed the January 28, 2022 qualification deadline for Alabama's 2022 congressional elections for 14 days, through February 11, 2022, to allow the Alabama Legislature the opportunity to enact a remedial plan. And we ordered two other Defendants, Senator Jim McClendon and Representative Chris Pringle, who co-chair Alabama's Permanent Legislative Committee on Reapportionment ("the Legislators") to advise us if the Legislature was unable to pass a remedial plan within 14 days of the date of the preliminary injunction, so that we could appoint (at the expense of Defendants) an eminently qualified expert to draw on an expedited basis a map that complies with federal law for use in Alabama's 2022 congressional elections.

Since we issued the preliminary injunction, we have held two status conferences and remain unaware of any effort by the Legislature to begin the legislative process of passing a new map. *See* Tr. of Jan. 26, 2022 Hrg. at 13–14; Tr. of Jan. 28, 2022 Hrg. at 13; *Singleton* Doc. 98 at 2. Accordingly, the court has

prepared to assume "the unwelcome obligation . . . to devise and impose a reapportionment plan" for use in Alabama's next congressional elections. *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) (internal citation and quotation marks omitted).

After we issued the preliminary injunction, we asked the parties to identify potential Special Masters and map-drawing experts to assist the court in preparing a remedial map if it became necessary for the court to do so. Each set of plaintiffs in these cases and the related case, *Caster v. Merrill*, Case No. 2:21-cv-1536-AMM, as well as the Defendants, submitted names of persons for the court to consider. *See Singleton* Docs. 94 & 95; *Milligan* Docs. 121 & 122; *Caster* Docs. 111 & 112. After we reviewed those submissions and conducted our own research, at a status conference conducted on January 28, 2022, we asked the parties to comment specifically on two candidates: Mr. Richard Allen as a potential Special Master, and Dr. Nathaniel Persily as a potential expert cartographer.

Mr. Allen is an esteemed public servant with eminent knowledge of Alabama state government. After seven years of active-duty military service, he attended the University of Alabama School of Law, where he earned numerous accolades, including the selection by his classmates as the most outstanding graduate in his final year. After he graduated from law school, he clerked for Alabama Supreme Court Chief Justice Howell Heflin and then commenced his private practice at a well-regarded law firm in Montgomery. After Mr. Heflin was elected to the United States

Senate, Mr. Allen served as his Chief Legislative Assistant for a time. He then returned to Montgomery, where he spent fifteen years in private practice before Alabama Attorney General Jeff Sessions tapped him to serve as Chief Deputy Attorney General. Mr. Allen served in that role for ten years: first with Attorney General Sessions, then with Attorney General William H. Pryor Jr., and then with Attorney General Troy King. He then returned to private practice, but not for long before he was tapped again, this time by Governor Bob Riley to serve as Commissioner of the Alabama Department of Corrections. After five years of service in that role, Mr. Allen left to return to his previous work as Chief Deputy Attorney General, serving this time with Attorney General Luther Strange. Mr. Allen then returned to private practice, where he also served for four years as the parliamentary law advisor for then-Lieutenant Governor Kay Ivey. The foregoing narrative recites only one dimension of Mr. Allen's career of service: after he graduated from law school, Mr. Allen spent twenty years as an officer in the United States Army Reserve and retired from military service with the rank of Brigadier General.

Dr. Persily is a distinguished law professor with eminent knowledge of redistricting issues and electoral maps. He earned undergraduate and graduate degrees in political science from Yale University, an additional graduate degree and doctoral degree in political science from the University of California, Berkeley, and

a law degree from Stanford Law School, where he was President of the STANFORD LAW REVIEW. He served as a law clerk to Judge David S. Tatel on the United States Court of Appeals for the D.C. Circuit; then worked as a Professor of Law at Columbia Law School and a Professor of Law at the University of Pennsylvania Law School; and currently works as the James B. McClatchy Professor of Law at Stanford Law School. He has served as a special master or court-appointed expert to craft congressional or legislative districting plans in Georgia, Maryland, Connecticut, New York, North Carolina, and Pennsylvania. He has published numerous articles in leading peer-reviewed journals on issues surrounding the census and redistricting process; he is one of the authors of a leading election-law casebook; and he regularly comments for national television, radio, and newspaper media on election-law and redistricting issues.

The *Milligan* plaintiffs, *Caster* plaintiffs, and Defendants filed responses to the court's request for comments about Mr. Allen and Dr. Persily. *See Milligan* Docs. 126 & 127; *Caster* Docs. 116 & 117. No plaintiffs objected to the appointment of Mr. Allen or Dr. Persily. However, the *Milligan* and *Caster* plaintiffs did request that Mr. Allen and Dr. Persily be appointed as joint special masters. *Milligan* Doc. 127; *Caster* Doc. 116 at 2. Defendants also had no objection to the appointment of Mr. Allen. Moreover, they had no objection to the appointment of Dr. Persily, provided that he had not "discussed this case with counsel for any party or publicly

taken a position on the preliminary injunction." *Milligan* Doc. 126. Defendants also "note[d] that the district court has provided the Legislature until February 7 to pass a remedial plan," advised the court that their emergency application for a stay of the preliminary injunction remains pending in the Supreme Court, and "object[ed] to any Court-retained experts incurring costs until after February 7, 2022." *Id*. at 2–3. The court has since inquired of Dr. Persily and is satisfied that he has neither communicated about this case with counsel for any party nor taken a public position on the preliminary injunction.

Accordingly, we advised the parties in an Order dated February 3, 2022 that if the Legislature was unable to enact a new map as of today's date, the court would draw on its inherent authority and, pursuant to Federal Rule of Civil Procedure 53, issue a detailed order appointing Mr. Allen as Special Master and appointing Dr. Persily as an expert cartographer, with instructions (1) not to incur costs until February 8, 2022 and, thereafter (2) to consult all parties about the parties' proposals for drawing a remedial map and to obtain the supporting data at the earliest opportunity after that date. This is that Order.

Pursuant to the court's inherent authority and Federal Rule of Civil Procedure 53, Mr. Richard Allen is **APPOINTED** Special Master and Dr. Nathaniel Persily is **APPOINTED** as the court's expert cartographer, with the following authority, responsibility, and instructions:

6

1.     The Special Master and expert cartographer are empowered and charged with the duty to prepare and recommend to the court a remedial map or maps, or to recommend a remedial map or maps proposed by any of the parties, for the court to order Secretary Merrill to use in Alabama's upcoming congressional elections, consistent with the preliminary injunction.

2.     In developing a remedial map or maps, or recommending a remedial map or maps proposed by any of the parties, the Special Master and expert cartographer must (a) use 2020 census data; (b) adhere to the requirements of the United States Constitution and the Voting Rights Act; and (c) consider and make all reasonable efforts where possible to defer to the redistricting guidelines promulgated by the Alabama Legislature, which are attached hereto as Appendix A.

3.     The Special Master and expert cartographer are authorized to retain appropriate assistants and experts as may be reasonably necessary for them to accomplish their task within the time constraints imposed by this Order. The expert cartographer is authorized to buy any specialized software reasonably necessary to facilitate his work.

4.     The Special Master and expert cartographer are authorized to issue appropriate orders as may be reasonably necessary for them to accomplish their task within the time constraints imposed by this Order.

5.     The Special Master and expert cartographer may not engage in *ex parte* communications with the parties or their counsel, but may engage in *ex parte* communications with the court as the need may arise.

6.     The Special Master and expert cartographer shall consider any proposals, plans, and comments submitted to them by any of the parties to these cases, and they are directed to invite submissions and comments, take testimony, and hold hearings as may be necessary to reasonably assist them to develop a remedial plan (or to recommend a remedial plan that any of the parties has proposed).

7.     All reasonable costs and expense of the Special Master and expert cartographer, including reasonable compensation for those persons and any assistants they may retain, shall (subject to the approval of this court) be paid by the State of Alabama. The Special Master and expert cartographer are directed not to incur any costs before February 8, 2022.

8.     We are fully aware of the need to have a remedial map in place as soon as is reasonably possible. Accordingly, we direct that the Special Master and expert

cartographer file a report that contains the recommended map(s) and explains the basis for the recommendation(s) not later than **February 22, 2022**.

To facilitate the work of the Special Master and expert cartographer:

1.    Defendants are **ORDERED** to notify Dr. Persily in writing and not later than 12:00 pm Central Standard Time Tuesday, February 8, 2022 whether they have a Maptitude license to make available for him to use for his work on this case, or whether it will be necessary for Dr. Persily to acquire one for that purpose (the cost of which ultimately will be taxed to Defendants).

2.    The *Milligan* and *Singleton* plaintiffs are **ORDERED** to provide to Dr. Persily not later than 12:00 pm Central Standard Time Tuesday, February 8, 2022:

    a.    The block equivalency files for the remedial maps offered by the *Milligan* plaintiffs in connection with their claims under the Voting Rights Act (the plans that are referred to in the preliminary injunction as the "Duchin plans" and the "Hatcher plan").

    b.    The block equivalency files for the remedial maps offered by the *Singleton* plaintiffs in connection with their claim (the plans that are referred to in the preliminary injunction as the "Whole County Plans").

3.    Defendants are **ORDERED** to provide to Dr. Persily not later than 12:00 pm Central Standard Time Tuesday, February 8, 2022, (1) the block equivalency files for the Plan and its predecessor, the plan described in the preliminary injunction as "the 2011 congressional map," (2) shapefiles for Alabama's municipalities and current voting districts (precincts), and (3) a shapefile reflecting the location of the current residence of each of Alabama's current members of the United States House of Representatives.

After the Special Master and expert cartographer file the report and recommendations, this court will hold a public hearing to receive comments and objections, if there are any, to the recommended plan(s).

We are mindful that the Legislature has substantially more discretion than we do in drawing a remedial map: state legislatures may consider political

8

circumstances that courts may not. *See, e.g.*, *Upham v. Seamon*, 456 U.S. 37, 39–43 (1982); *Connor v. Finch*, 431 U.S. 407, 414–15 (1977); *Wyche v. Madison Parish Police Jury*, 635 F.2d 1151, 1160 (5th Cir. 1981). Our instructions to the Special Master and expert cartographer are consistent with these limitations.

We remain hopeful that the Alabama Legislature will take up the task of passing an electoral map that complies with federal law. Nothing in this Order or any previous Order of this court prevents or should discourage the Legislature from taking up that task. "It is well settled that 'reapportionment is primarily the duty and responsibility of the State,'" *Miller v. Johnson*, 515 U.S. 900, 915 (1995) (quoting *Chapman v. Meier,* 420 U.S. 1, 27 (1975)); that "it is the domain of the States, and not the federal courts, to conduct apportionment in the first place," *Voinovich v. Quilter*, 507 U.S. 146, 156 (1993); that each State has a "sovereign interest in implementing its redistricting plan," *Bush v. Vera*, 517 U.S. 952, 978 (1996); that "drawing lines for congressional districts is one of the most significant acts a State can perform to ensure citizen participation in republican self-governance," *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 416 (2006) (citation omitted); and that because "the Constitution vests redistricting responsibilities foremost in the legislatures of the States and in Congress, a lawful, legislatively enacted plan should be preferable to one drawn by the courts," *id*.

If any party anticipates or encounters any difficulty complying with any aspect of this Order, that party is **DIRECTED** to advise the court without delay.

**DONE** and **ORDERED** this 7th day of February, 2022.

_____
**STANLEY MARCUS**
UNITED STATES CIRCUIT JUDGE


_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE


_____
**TERRY F. MOORER**
UNITED STATES DISTRICT JUDGE

APPENDIX A

1   **REAPPORTIONMENT COMMITTEE REDISTRICTING GUIDELINES**

2                                    May 5, 2021

3   **I. POPULATION**

4   The total Alabama state population, and the population of defined subunits
5   thereof, as reported by the 2020 Census, shall be the permissible data base used
6   for the development, evaluation, and analysis of proposed redistricting plans. It is
7   the intention of this provision to exclude from use any census data, for the purpose
8   of determining compliance with the one person, one vote requirement, other than
9   that provided by the United States Census Bureau.

10   **II. CRITERIA FOR REDISTRICTING**

11   a.      Districts shall comply with the United States Constitution, including the
12   requirement that they equalize total population.

13   b.       Congressional districts shall have minimal population deviation.

14   c.      Legislative and state board of education districts shall be drawn to achieve
15   substantial equality of population among the districts and shall not exceed an
16   overall population deviation range of ±5%.

17   d.      A redistricting plan considered by the Reapportionment Committee shall
18   comply with the one person, one vote principle of the Equal Protection Clause of
19   the 14th Amendment of the United States Constitution.

20   e.      The Reapportionment Committee shall not approve a redistricting plan that
21   does not comply with these population requirements.

22   f.      Districts shall be drawn in compliance with the Voting Rights Act of 1965, as
23   amended. A redistricting plan shall have neither the purpose nor the effect of
24   diluting minority voting strength, and shall comply with Section 2 of the Voting
25   Rights Act and the United States Constitution.

26   g.      No district will be drawn in a manner that subordinates race-neutral
27   districting criteria to considerations of race, color, or membership in a language-
28   minority group, except that race, color, or membership in a language-minority
29   group may predominate over race-neutral districting criteria to comply with
30   Section 2 of the Voting Rights Act, provided there is a strong basis in evidence in
31   support of such a race-based choice. A strong basis in evidence exists when there
32   is good reason to believe that race must be used in order to satisfy the Voting Rights
33   Act.

10213405.2

RC 044593

h.     Districts will be composed of contiguous and reasonably compact geography.

i.     The following requirements of the Alabama Constitution shall be complied with:

(i)     Sovereignty resides in the people of Alabama, and all districts should be drawn to reflect the democratic will of all the people concerning how their governments should be restructured.

(ii)     Districts shall be drawn on the basis of total population, except that voting age population may be considered, as necessary to comply with Section 2 of the Voting Rights Act or other federal or state law.

(iii)     The number of Alabama Senate districts is set by statute at 35 and, under the Alabama Constitution, may not exceed 35.

(iv)     The number of Alabama Senate districts shall be not less than one-fourth or more than one-third of the number of House districts.

(v)     The number of Alabama House districts is set by statute at 105 and, under the Alabama Constitution, may not exceed 106.

(vi)     The number of Alabama House districts shall not be less than 67.

(vii)     All districts will be single-member districts.

(viii)     Every part of every district shall be contiguous with every other part of the district.

j.     The following redistricting policies are embedded in the political values, traditions, customs, and usages of the State of Alabama and shall be observed to the extent that they do not violate or subordinate the foregoing policies prescribed by the Constitution and laws of the United States and of the State of Alabama:

(i)      Contests between incumbents will be avoided whenever possible.

(ii)     Contiguity by water is allowed, but point-to-point contiguity and long-lasso contiguity is not.

(iii)     Districts shall respect communities of interest, neighborhoods, and political subdivisions to the extent practicable and in compliance with paragraphs a through i. A community of interest is defined as an area with recognized similarities of interests, including but not limited to ethnic, racial, economic, tribal, social, geographic, or historical identities. The term communities of interest may, in certain circumstances, include political subdivisions such as counties, voting

2

RC 044594

1   precincts, municipalities, tribal lands and reservations, or school districts. The
2   discernment, weighing, and balancing of the varied factors that contribute to
3   communities of interest is an intensely political process best carried out by elected
4   representatives of the people.

5   (iv)    The Legislature shall try to minimize the number of counties in each district.

6   (v)    The Legislature shall try to preserve the cores of existing districts.

7   (vi)   In establishing legislative districts, the Reapportionment Committee shall
8   give due consideration to all the criteria herein. However, priority is to be given to
9   the compelling State interests requiring equality of population among districts and
10   compliance with the Voting Rights Act of 1965, as amended, should the
11   requirements of those criteria conflict with any other criteria.

12   g.    The criteria identified in paragraphs j(i)-(vi) are not listed in order of
13   precedence, and in each instance where they conflict, the Legislature shall at its
14   discretion determine which takes priority.

15 **III. PLANS PRODUCED BY LEGISLATORS**

16   1.    The confidentiality of any Legislator developing plans or portions thereof
17   will be respected. The Reapportionment Office staff will not release any
18   information on any Legislator's work without written permission of the Legislator
19   developing the plan, subject to paragraph two below.

20   2.    A proposed redistricting plan will become public information upon its
21   introduction as a bill in the legislative process, or upon presentation for
22   consideration by the Reapportionment Committee.

23   3.    Access to the Legislative Reapportionment Office Computer System, census
24   population data, and redistricting work maps will be available to all members of
25   the Legislature upon request. Reapportionment Office staff will provide technical
26   assistance to all Legislators who wish to develop proposals.

27   4.    In accordance with Rule 23 of the Joint Rules of the Alabama Legislature
28   "[a]ll amendments or revisions to redistricting plans, following introduction as a
29   bill, shall be drafted by the Reapportionment Office." Amendments or revisions
30   must be part of a whole plan. Partial plans are not allowed.

31   5.    In accordance with Rule 24 of the Joint Rules of the Alabama Legislature,
32   "[d]rafts of all redistricting plans which are for introduction at any session of the
33   Legislature, and which are not prepared by the Reapportionment Office, shall be
34   presented to the Reapportionment Office for review of proper form and for entry
35   into the Legislative Data System at least ten (10) days prior to introduction."

10213405.2

RC 044595

## IV. REAPPORTIONMENT COMMITTEE MEETINGS AND PUBLIC HEARINGS

1.     All meetings of the Reapportionment Committee and its sub-committees will be open to the public and all plans presented at committee meetings will be made available to the public.

2.     Minutes of all Reapportionment Committee meetings shall be taken and maintained as part of the public record. Copies of all minutes shall be made available to the public.

3.     Transcripts of any public hearings shall be made and maintained as part of the public record, and shall be available to the public.

4.     All interested persons are encouraged to appear before the Reapportionment Committee and to give their comments and input regarding legislative redistricting. Reasonable opportunity will be given to such persons, consistent with the criteria herein established, to present plans or amendments redistricting plans to the Reapportionment Committee, if desired, unless such plans or amendments fail to meet the minimal criteria herein established.

5.     Notice of all Reapportionment Committee meetings will be posted on monitors throughout the Alabama State House, the Reapportionment Committee's website, and on the Secretary of State's website. Individual notice of Reapportionment Committee meetings will be sent by email to any citizen or organization who requests individual notice and provides the necessary information to the Reapportionment Committee staff. Persons or organizations who want to receive this information should contact the Reapportionment Office.

## V. PUBLIC ACCESS

1.     The Reapportionment Committee seeks active and informed public participation in all activities of the Committee and the widest range of public information and citizen input into its deliberations. Public access to the Reapportionment Office computer system is available every Friday from 8:30 a.m. to 4:30 p.m. Please contact the Reapportionment Office to schedule an appointment.

2.     A redistricting plan may be presented to the Reapportionment Committee by any individual citizen or organization by written presentation at a public meeting or by submission in writing to the Committee. All plans submitted to the Reapportionment Committee will be made part of the public record and made available in the same manner as other public records of the Committee.

10213405.2

RC 044596

3.     Any proposed redistricting plan drafted into legislation must be offered by a member of the Legislature for introduction into the legislative process.

4.     A redistricting plan developed outside the Legislature or a redistricting plan developed without Reapportionment Office assistance which is to be presented for consideration by the Reapportionment Committee must:

a.     Be clearly depicted on maps which follow 2020 Census geographic boundaries;

b.     Be accompanied by a statistical sheet listing total population for each district and listing the census geography making up each proposed district;

c.     Stand as a complete statewide plan for redistricting.

d.     Comply with the guidelines adopted by the Reapportionment Committee.

5.     Electronic Submissions

a.     Electronic submissions of redistricting plans will be accepted by the Reapportionment Committee.

b.     Plans submitted electronically must also be accompanied by the paper materials referenced in this section.

c.     See the Appendix for the technical documentation for the electronic submission of redistricting plans.

6.     Census Data and Redistricting Materials

a.     Census population data and census maps will be made available through the Reapportionment Office at a cost determined by the Permanent Legislative Committee on Reapportionment.

b.     Summary population data at the precinct level and a statewide work maps will be made available to the public through the Reapportionment Office at a cost determined by the Permanent Legislative Committee on Reapportionment.

c.     All such fees shall be deposited in the state treasury to the credit of the general fund and shall be used to cover the expenses of the Legislature.

## Appendix.

## ELECTRONIC SUBMISSION OF REDISTRICTING PLANS

## REAPPORTIONMENT COMMITTEE - STATE OF ALABAMA

5

RC 044597

1

2        The Legislative Reapportionment Computer System supports the electronic
3 submission of redistricting plans. The electronic submission of these plans must
4 be via email or a flash drive. The software used by the Reapportionment Office is
5 Maptitude.

6        The electronic file should be in DOJ format (Block, district # or district #,
7 Block). This should be a two column, comma delimited file containing the FIPS
8 code for each block, and the district number. Maptitude has an automated plan
9 import that creates a new plan from the block/district assignment list.

10       Web services that can be accessed directly with a URL and ArcView
11 Shapefiles can be viewed as overlays. A new plan would have to be built using this
12 overlay as a guide to assign units into a blank Maptitude plan. In order to analyze
13 the plans with our attribute data, edit, and report on, a new plan will have to be
14 built in Maptitude.

15       In order for plans to be analyzed with our attribute data, to be able to edit,
16 report on, and produce maps in the most efficient, accurate and time saving
17 procedure, electronic submissions are REQUIRED to be in DOJ format.

18 Example: (DOJ FORMAT BLOCK, DISTRICT #)

19 SSCCCTTTTTTBBBBDDDD

20 SS      is the 2 digit state FIPS code

21 CCC     is the 3 digit county FIPS code

22 TTTTTT   is the 6 digit census tract code

23 BBBB    is the 4 digit census block code

24 DDDD      is the district number, right adjusted

25 **Contact Information:**

26 Legislative Reapportionment Office

27 Room 317, State House

28 11 South Union Street

29 Montgomery, Alabama 36130

30 (334) 261-0706

10213405.2

RC 044598

1   For questions relating to reapportionment and redistricting, please contact:

2   Donna Overton Loftin, Supervisor

3   Legislative Reapportionment Office

4   donna.overton@alsenate.gov

5   Please Note: The above e-mail address is to be used only for the purposes of
6   obtaining information regarding redistricting. Political messages, including those
7   relative to specific legislation or other political matters, cannot be answered or
8   disseminated via this email to members of the Legislature. Members of the
9   Permanent Legislative Committee on Reapportionment may be contacted through
10  information contained on their Member pages of the Official Website of the
11  Alabama Legislature, legislature.state.al.us/aliswww/default.aspx.

7

10213405.2

RC 044599