UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD AGEE, JR., *et al.*, | ) |
|     Plaintiffs, | ) |
| | )   No. 1:22-cv-272 |
| v. | ) |
| | )   Three-Judge Court |
| JOCELYN BENSON, in her official capacity as the Secretary of State of Michigan, *et al.*, | ) |
|     Defendants. | ) |

## ORDER DENYING MOTION TO STAY INJUNCTION

The Court enjoined the Secretary of State from holding elections in several of Michigan's House and Senate districts because they were drawn in violation of the Equal Protection Clause of the United States Constitution. (ECF No. 131). Defendant, the Michigan Independent Citizens Redistricting Commission (the "Commission"), filed a notice of appeal and moved to stay this Court's injunction. (ECF Nos. 140, 141). Plaintiffs have not filed a response, but the Court need not wait. The Commission's motion to stay our injunction is denied.

### I. Background

In 2022, a group of African American Detroiters sued the Commission alleging Voting Rights Act ("VRA") violations and Fourteenth Amendment violations stemming from the Commission's redrawing of the state House and Senate districts in and around metro Detroit. This Court held that the Commission violated the Fourteenth Amendment by drawing thirteen of Michigan's legislative districts predominately on the basis of race but did

1

not reach the VRA claims. As discussed at length in this Court's opinion, the transcript that captured the Commission's redrawing process showed overwhelmingly that the Commission subordinated all other redistricting criteria to their target BVAPs in Detroit-area districts. (ECF No. 131). In tandem with the transcript, the Court credited Plaintiffs' witnesses at the six-day trial. At the same time, the Court could not credit the Commissioner's key witness, Commissioner Anthony Eid, whose testimony was not credible. Between the transcripts and the testimony offered at trial, we reached the unassailable conclusion that race predominated the Commission's redistricting of metro Detroit.

Now, the Commission urges us to set aside those findings in order to appeal to the Supreme Court on the issue of "whether the enjoined districts are narrowly tailored to §2 [VRA] compliance." (ECF No. 141 at PID 4954). The Commission does not seem to challenge that race predominated its redistricting process, but instead insists that it had "good reasons" to believe its racial gerrymandering was necessary to comply with the VRA. As discussed in the Court's earlier opinion—and below—that view is implausible because the Commission lacked the requisite data to believe the three *Gingles* preconditions were met.

## II. Legal Standard

To determine whether to grant a stay, courts typically consider "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether [it] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties . . . ; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

### III. Analysis

The Commission cannot make a strong showing that it is likely to succeed on the merits because it had no "good reason" to believe that the three *Gingles* prongs were met. To determine that the *Gingles* preconditions were met, the Commission needed data showing that (1) that African American Detroiters were sufficiently large and compact to constitute a majority in single-member districts; (2) that they were politically cohesive; (3) and that white voters voted as a bloc to usually defeat the African American candidate of choice. *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). The Court found that the districts were drawn predominantly on the basis of race, which means those districts "cannot be upheld unless they are narrowly tailored to achieving a compelling state interest." *Wisc. Legis. v. Wisc. Elections Comm'n*, 595 U.S. 398, 401 (2022) (quoting *Miller v. Johnson*, 515 U.S. 900, 904 (1995)). The Supreme Court has assumed that compliance with the VRA can be a compelling interest that provides for drawing districts along racial lines. *Id.*

The Commission relied on data from Dr. Lisa Handley "indicating that voting [was] racially polarized in [metro Detroit] and that districts falling below certain BVAP levels (around 35%) would not afford African American voters an equal opportunity to the elect their preferred candidates." (ECF No. 141 at PID 4954–55). The Commission then repeatedly lowered BVAP levels in districts in metro Detroit to conform with those racial targets. But that data set was nonprobative because it did not include primary election data. Detroit area politics rise and fall in the Democratic party's primary elections because Democrats almost always prevail in the general elections. Simply put, the Commission had no data indicating how African American candidates of choice performed in the Democratic

3

primaries in Detroit. Working to prevent packing black voters into districts is not the same as splintering them to hit racial targets based on incomplete data. The Commission cannot show it engaged in a narrowly tailored approach to justify its racial gerrymandering.

The Commission can make a plausible showing that it will suffer irreparable harm because of the delicate balance between federal courts and a state's administration of its elections. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). We note that drawing an electoral map without racial predominance before the 2024 election is possible, however. Through the Supremacy Clause, this Court's authority to effectuate federal law trumps the Commission's "dignitary and practical interests" in creating electoral maps. U.S. Const., Art. VI, cl. 2; *see also Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 543 (2013) ("Outside the strictures of the Supremacy Clause, States retain broad autonomy in structuring their governments and pursuing legislative objectives.").

The balance of harms and the public interest do not favor a stay. There's no doubt the Commission will face a tight timeline going forward as it endeavors to draw new Senate and House districts. But Plaintiffs, as well as the millions of Michiganders in metro Detroit, deserve maps that are not racially gerrymandered. Their injuries are not "ill-defined" as the Commission insists. (ECF No. 141 at PID 4960). The Commission avers it received little guidance from the Court and that it is unsure whether "to draw without racial considerations or whether to draw with *different* ones." (ECF No. 141 at PID 4959). Going forward, the

4

Commission should apply the criteria mandated by the Michigan Constitution and stop using the VRA as a proxy for race. The Court refuses to prescribe the Commission with a new racial target.

Finally, the Secretary of State needs a new Michigan House of Representatives electoral map as soon as possible. The Commission indicated it can produce maps for public comment by February 2, 2024. (ECF No. 145 at PID 5021). The Commission must publish proposed House maps for notice and comment by February 2, 2024. A detailed scheduling order is forthcoming.

The next Michigan Senate elections are in 2026. The Court will deny Plaintiffs' request for special Senate elections in 2024. The Court will issue a formal opinion relating to the Senate, but the parties should be aware now so they can focus on the House districts and 2024.

**IT IS ORDERED** that the Commission's motion to stay the injunction (ECF No. 141) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commission must produce an electoral map for the Michigan House of Representatives by February 2, 2024, for public comment.

**IT IS SO ORDERED.**

Date:  January 8, 2024                     /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge
                                                           On Behalf of the Three Judge Court