UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD AGEE, JR. *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>JOCELYN BENSON, in her official capacity as the Secretary of State of Michigan, *et al.*,<br>    Defendants. | No. 1:22-cv-272<br><br>Three-Judge Court |

## **ORDER DENYING REQUEST FOR SPECIAL ELECTIONS**

On December 21, 2023, we unanimously held that the Michigan Independent Citizens Redistricting Commission violated the Equal Protection Clause of the U.S. Constitution when it drew the boundaries of thirteen state legislative districts—seven House districts, and six Senate ones—predominantly on the basis of race. We therefore enjoined the Michigan Secretary of State, Jocelyn Benson, from holding further elections in those districts as they are currently drawn. *See* ECF No. 131. As a matter of course, under Michigan law, the State will hold elections for every seat in the State House later this year. We have therefore ordered that the unconstitutional House districts be redrawn before those elections take place. *See* ECF No. 156. Elections in the unconstitutional Senate districts, by contrast, are not scheduled to occur until 2026. (In Michigan, elections for every state senate seat are held every four years. Mich. Const. Art. IV § 2.) But the plaintiffs have requested that we order special elections in those districts this year.

The Supreme Court has "never addressed whether or when a special election may be a proper remedy for a racial gerrymander." *North Carolina v. Covington*, 581 U.S. 486, 488 (2017) (cleaned up). But the Court has said that, "in the context of deciding whether to truncate existing legislators' terms and order a special election, there is much for a court to weigh." *Id*. That is

No. 1-22-cv-272
*Agee et al. v. Benson et al.*

certainly the case here: the plaintiffs, the Commission, and the Secretary of State each make important points regarding whether we should order special elections in these Senate districts.

The Supreme Court has told lower courts to consider at least three factors regarding whether special elections are "a fitting remedy for the legal violations it has identified[.]" *Id*. at 488. The first is the "severity and nature of the particular constitutional violation." *Id*. Here, the nature of the racial gerrymanders is "odious[,]" as the Supreme Court has repeatedly said. *Wisc. Legis. v. Wisc. Elec. Comm'n*, 595 U.S. 398, 401 (2022) (quoting *Shaw v. Reno*, 509 U.S. 630, 643 (1993)). The constitutional violations are also severe: the six unconstitutional Senate districts (specifically, Districts 1, 3, 6, 8, 10, and 11) encompass some 1.7 million voters, who for two years now have been represented by Senators elected pursuant to racial gerrymanders. Pl.'s Ex. 2 at 25. And that will remain true, absent special elections, for a total of four years—which is 40% of this census cycle.

Yet we must also consider "the extent of the likely disruption to the ordinary processes of governance if early elections are imposed, and the need to act with proper judicial restraint when intruding on state sovereignty." *Covington*, 581 U.S. at 488. Here, those two factors tend to run together. On the one hand, shortening by two years the terms of Senators elected in racially gerrymandered districts—standing alone as a consideration—would be a proportional remedy for the constitutional violations in those same districts. *Cf. Brown v. Plata*, 563 U.S. 493, 531 (2011) ("the scope of the remedy must be proportional to the violation"). But special elections in those districts would present serious problems as to implementation. As an initial matter, the Secretary of State asserts that she would not be able to prepare "qualified voter files" for redrawn Senate districts before the 2024 election cycle begins. Special elections in these districts would thus likely

2

No. 1-22-cv-272
*Agee et al. v. Benson et al.*

be disruptive for the State's processes. And special elections in these districts alone would unavoidably disenfranchise some voters and doubly enfranchise others.

Specifically, the boundaries of the six senate districts that we have held to be unconstitutional will surely be different after those districts are redrawn. That means that some voters in the districts as originally drawn by the Commission will *not* be voters in the districts as redrawn; and some voters in the redrawn districts will *also* be residents of districts that we have not adjudicated to be unconstitutional. For example, suppose that Senate District 8, as racially gerrymandered by the Commission, includes cities A, B, and C. Suppose further that District 7—which we have not held to be unconstitutional—includes cities D, E, and F as originally drawn by the Commission. Both districts get redrawn as part of the Commission's remedial mapping: city A moves from District 8 to District 7, and F moves from District 7 to District 8.

Residents of A cannot vote in the special election for District 8 because they are not residents of that district as redrawn; and their current senator will be replaced in that same special election. The effect of that special election, therefore, is to disenfranchise residents of A and leave them without representation in the post special-election Senate. For none of those senators will have been elected in a district in which residents of A could vote.

Meanwhile, residents of F *do* get to vote in the special election, because they are residents of the redrawn District 8; and their current senator (from District 7) will *not* be replaced in the special election. Hence residents of F are doubly enfranchised and doubly represented in the post special-election Senate. For two of those senators will have been elected in a district in which residents of F could vote.

Special elections in the unconstitutional districts could therefore inflict almost as much harm as they remedy. And the only way to avoid those harms (disenfranchising some voters, and

3

No. 1-22-cv-272
*Agee et al. v. Benson et al.*

doubly enfranchising others) would be to hold special elections in *every* district—not just the unconstitutional ones—that the Commission redraws in its remedial mapping.  But that would require us also to shorten the terms of senators in Detroit-area districts that we have *not* adjudicated to be unconstitutional.  That remedy would be disproportionate to the constitutional violations and would not respect "the need to act with proper judicial restraint when intruding on state sovereignty."  *Id*. at 488.  Indeed, we doubt that we even possess equitable power to shorten the terms of senators in districts whose legality we have not adjudicated.

Having considered the factors that the Supreme Court has directed us to consider, therefore, we exercise our discretion not to order special elections in the Senate districts at issue here.  The plaintiffs' request for special elections in Senate Districts 1, 3, 6, 8, 10, and 11 is therefore **DENIED**.  The Motion of the Michigan Senate for Leave to File Brief as Amicus Curiae is **GRANTED**.

**IT IS SO ORDERED.**

Date:  January 12, 2024
/s/ Raymond M. Kethledge
Raymond M. Kethledge
United States Circuit Judge

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge

/s/ Janet T. Neff
Janet T. Neff
United States District Judge