UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD AGEE, JR. et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>JOCELYN BENSON, et al.,<br><br>     Defendants. | Case No. 1:22-CV-00272-PLM-RMK-JTN<br><br>**RESPONSE OF THE MICHIGAN INDEPENDENT CITIZENS REDISTRICTING COMMISSION TO PLAINTIFFS' OBJECTION TO PROPOSED SPECIAL MASTER BERNARD GROFMAN** |

  Plaintiffs are once again objecting to the appointment of an experienced special-master candidate based on threadbare suggestions of "conflicts of interest." This time, Plaintiffs lob these concerns at Dr. Bernard Grofman, who has been called "one of the world's leading experts in the study of redistricting and voting rights." *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1299 (11th Cir. 2020). To be clear, the Commission did not list Dr. Grofman among its proposed experts to this Court. The Commission nevertheless responds to address two points raised by their objection: (1) Plaintiffs' casting of unwarranted aspersions on the Commission, and (2) Plaintiffs' failure to align their arguments to the applicable recusal standards set forth in 28 U.S.C. § 455.

**PLAINTIFFS' ATTACKS ON THE COMMISSION'S WORK ARE SPECIOUS AND IRRELEVANT TO THE APPOINTMENT OF A SPECIAL MASTER**

  Plaintiffs spend much of their objection accusing the Commission of being "unrepentant" and intending to "recycle[]" the VRA compliance strategy that this Court supposedly rejected in its liability-phase ruling. These accusations are unfounded, absurd, and amount to yet another effort by Plaintiffs to undermine the Commission's remedial work.

  What Plaintiffs call "unrepentant" is, in fact, a work of appellate advocacy directed to the U.S. Supreme Court, which has jurisdiction to review this Court's order and injunction

under 28 U.S.C. § 1253. Needless to say, the Commission is entitled to appeal from the Court's permanent injunction, it is the Supreme Court's role to adjudicate the Commission's arguments, and those arguments on appeal do not amount to defiance of this Court's injunction. Plaintiffs' approach would deem virtually all appellate process defiance of district court orders. That, of course, is a profoundly mistaken view. The Commission recognizes that, if the Court's injunction is not stayed or otherwise disturbed, it will remain binding, and the Commission is currently treating the injunction as binding in its remedial redistricting work. None of that means the Commission lacks the right to present a fulsome appeal to the Supreme Court on a parallel track. The Court itself remarked that the Commission had "every right to appeal to the Supreme Court" and that the appeal was "a good thing."[1] Jan. 5, 2024, Hr'g Tr. 28:2-5 (ECF No. 155, PageID.5102) (remarks of Kethledge, J.).

Consistent with that parallel approach, the Commission has fully engaged with the remedial-phase proceedings in this case, notwithstanding its appeal. This is a responsibility the Commission takes seriously, as Michigan voters overwhelmingly voted to amend Michigan's Constitution to have citizens, and *not* politicians (or judges),[2] draw Michigan's representational districts. To that end, the Commission, its members, staff, and professionals, have been working tirelessly to meet this Court's February 2, 2024, deadline to propose a new

---

[1] Plaintiffs criticize (at 5 n.3) the Commission for listing Mark Braden on its stay application in the Supreme Court, but overlook that this Court had not directed that an ethical wall be placed between Mr. Braden and the Commission's litigation counsel when that application was filed.

[2] Michigan had a long history of the legislative and executive branches of its state government being unable to agree on a redistricting plan after the release of a new decennial census (a situation known as "impasse" in redistricting litigation), requiring the Michigan courts to step in to pass plans because the political branches could not.

2

plan, and have undertaken their work in good faith and bearing in mind the Court's orders. And they have done so despite Plaintiffs' unrelenting attacks in the press and in this Court.

Plaintiffs' specious allegations are also irrelevant to the selection of a special master. The Commission's work will be judged by the Court, with adversarial briefing supported by expert analysis, including by expert reports that Plaintiffs will sponsor from their experts. The special master is not there to evaluate legal advice given to the Commission, but rather will evaluate whether the Commission's ultimate adopted plan "lawfully remedies the constitutional violations identified in this court's December 21, 2023, opinion and order." Jan. 11, 2024, Order, at 5, ¶ 5, ECF No. 156, PageID.5153.

### PLAINTIFFS' CLAIMED "CONFLICTS OF INTEREST" COMPELLING DISQUALIFICATION OF DR. GROFMAN

Here, Plaintiffs object to Dr. Grofman based chiefly on their contention that he has "[professional] ties and shared philosophy" with a Commission expert, Dr. Handley, and that Dr. Grofman's "VRA approach is identical to the one this Court has already criticized and rejected." Pls' Obj. at 2, ECF No. 159, PageID.5164. This latter alleged philosophical dispute is what Plaintiffs call their "real problem" with Dr. Grofman. *Id.* at 4, PageID.5166. While the Commission does not have an opinion about what Dr. Grofman's "philosophy" to this specific case will be, it is compelled to point out that Plaintiffs' allegations are rooted in misrepresentation about the Commission's arguments before the Supreme Court.

To begin, Dr. Grofman has had a long career as a political scientist and special master in voting rights and redistricting work. He was the plaintiffs' expert in *Thornburg v. Gingles*, 478 U.S. 30, 52 (1986), which defined the standard for judging vote-dilution cases under the Voting Rights Act, and has authored multiple articles cited favorably by the Supreme Court. *See, e.g., Johnson v. De Grandy*, 512 U.S. 997, 1020 (1994) (favorably citing B. Grofman, L.

3

Handley, & R. Niemi, Minority Representation and the Quest for Voting Equality 136 (1992)); *Shaw v. Hunt*, 517 U.S. 899, 912 (1996) (*Shaw II*) (favorably citing B. Grofman & C. Davidson, Controversies in Minority Voting 56 (1992)); *Miller v. Johnson*, 515 U.S. 900, 924 (1995) (same); *Georgia v. Ashcroft*, 539 U.S. 461, 483 (2003) (favorably citing Grofman, Handley, & Lublin, Drawing Effective Minority Districts: A Conceptual Framework and Some Empirical Evidence, 79 N.C.L.Rev. 1383 (2001)); *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 798 (2015) (favorably citing Miller & Grofman, Redistricting Commissions in the Western United States, 3 U.C. Irvine L. Rev. 637, 661, 663–664, 666 (2013)).

Plaintiffs in particular take exception to the Commission's citation in its stay application before the Supreme Court of Grofman's pioneering article, Grofman, Handley, & Lublin, *Drawing Effective Minority Districts: A Conceptual Framework and Some Empirical Evidence*, 79 N.C.L. Rev. 1383 (2000-2001). *See* Pls' Obj. at 4–5, PageID.5166–67. That article pioneered the percent-needed-to-elect methodology to evaluate whether a representational district affords equal opportunity to elect. The Supreme Court has favorably cited to the *Drawing Effective Minority Districts* article, a point the Commission made in its Stay Application and which Plaintiffs' counsel tried to hide from this Court in its block-quote of the relevant paragraph. *See* Pls' Obj. at 4 (ellipses after the citation to the article); *compare* Pls' Obj. at Ex. B, Comm'n Jan. 9, 2024, Application for Stay, at 11 (omitted language consisted of: "...which this [Supreme] Court has cited favorably, *see Georgia*, 539 U.S. at 482–83."). It would be odd indeed to conclude that work the Supreme Court has favorably cited is evidence against Dr. Grofman's fitness to serve as a special master.

4

Further, in their zeal to criticize Dr. Grofman's "philosophy," Plaintiffs incorrectly represent the article and the Court's holding. This Court did not address Dr. Handley's percent-needed-to-win methodology; its criticism was that Dr. Handley's opinions were purportedly based on general elections, not primary elections. *See* Op. and Order, Nov. 21, 2023, at 113, ECF No. 131, PageID.4816. However, the Court did not hold that the methodology itself—which has formed the basis of Voting Rights Act liability, *see Wright v. Sumter Cnty. Bd. of Elections & Registration*, 301 F. Supp. 3d 1297, 1311, 1324–25 (M.D. Ga. 2018), *aff'd*, 979 F.3d 1282 (11th Cir. 2020)—was "invalid," as Plaintiffs allege, Pls' Obj. at 5. And the article did not express any opinion about what percentage black voting-age population ("BVAP") is required in 2024 for Black voters to have an equal opportunity to elect state legislators in Detroit. Rather, any opinion that any expert or special master will express in the remedial phase will be as the result of that expert or master's own application of the tools of political science to the data.

Ultimately, Plaintiffs' speculation about how Dr. Grofman may in the future apply one tool of political science to go about the work of evaluating the Commission's work is not a basis for disqualification. The standards governing recusal or disqualification for a special master—which Plaintiffs notably did not argue to—are set forth in 28 U.S.C. § 455, i.e., the standards applicable to a judge. Fed. R. Civ. P. 53(a)(2). *See also, e.g., Cobell v. Norton,* 334 F.3d 1128, 1143–44 (D.C. Cir. 2003); *In re Joint Eastern and Southern Districts Asbestos Litig.,* 737 F. Supp. 735, 739–40 (E.D.N.Y. 1990). The standard of 28 U.S.C. § 455(a) is "objective," *In re M. Imbrahim Khan, P.S.C.,* 751 F.2d 162, 164 (6th Cir. 1984), and requires disqualification only "if there is a reasonable factual basis for doubting [the judge's] impartiality." *Id.* (citing cases).

Disqualification under § 455(a) is not a step to be taken "lightly." *United States v. Johnson*, No. 5:16-CR-45, 2019 WL 2111524, *3 (E.D. Ky. Apr. 26, 2019).[3] That is because "[o]ur judicial system would be paralyzed if judges were disqualified from deciding cases because of views about, or differences over, abstract policy issues." *Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 491 (1st Cir. 1989).

For that reason, allegations of partiality based on judge's loose relationships with parties or general positions on issues have been held insufficient to require disqualification. In *Easley v. University of Michigan Bd. of Regents*, 906 F.2d 1143, 1146–47 (6th Cir. 1990), *cert. denied*, 499 U.S. 947 (1991), the Sixth Circuit also found that the fact the district judge was an alumnus, volunteer fundraiser, and member of the Committee of Visitors of the University of Michigan School of Law was not a basis for recusal from a racial discrimination action brought against that University. Central to *Easley*'s finding was the fact that "[n]othing in the expanded record suggests that Judge Feikens was privy to extra-judicial information related to [Plaintiff's] situation at the University of Michigan Law School. . ." *Id.* at 1147. Likewise, in *United States v. Norton*, the Sixth Circuit found that a judge's expressed opposition to the Ku Klux Klan and Nazi Party did not require disqualification in a criminal prosecution where the defendants were affiliated with those groups. 700 F.2d 1072, 1076 (6th Cir.), *cert. denied*, 461 U.S. 910 (1983). Rather, the court held, the judge properly instructed the jury that "the

---

[3] The Commission notes that 28 U.S.C. § 455(b)(1) also requires disqualification in circumstances where a judge has "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Plaintiffs have not cited § 455(b)(1), and the thrust of their objection is that "Plaintiffs question Dr. Grofman's objectivity," Obj. at 2, ECF No. 159, PageID.5164, which goes to impartiality.

American Nazi Party and the KKK were not on trial and that the defendants were not being tried for their affiliations with these groups." *Id.*

As applied to special masters, it has been held that a party's "[d]isagreement with the special masters' interpretation and application of legal standards or case management orders provides no grounds for recusal," *Byrd v. Sec'y of Health and Human Servs.*, 142 Fed. Cl. 79, 86 (2019) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). Here, Plaintiffs are one step removed from even that—they seek disqualification or recusal of Dr. Grofman based on their fear that they might disagree with Dr. Grofman's future application of a political-science methodology or his future interpretation of legal standards.

Finally, it is relevant to mention that in the *Holloway v. City of Virginia Beach* litigation, a Section 2 VRA challenge to the City of Virginia Beach's then use of residency districts to elect its City Council, Dr. Handley served as a remedial-phase expert for the City (the defendant) and Dr. Grofman was appointed special master in the remedial phase. *See, e.g., Holloway v. City of Virginia Beach*, No. 2:18-cv-69, 2021 WL 6199585, *1 (E.D. Va. Dec. 22, 2021) (recognizing Dr. Grofman was appointed special master and was directed to perform a "review of the parties' proposed remedial plans"); *id.* at ECF No. 260 (Defendant City's Remedial Submission, Jul. 1, 2021) (proposing plan and including report of Dr. Handley); *id.* at ECF No. 283 (Defendant City's Resp. to Special Master's Rep., Nov. 16, 2021) (including report of Dr. Handley). In his special master's report, Dr. Grofman "found that neither plan was responsive to the violations the Court found, and submitted his own proposed remedial plan," a result inconsistent with the suggestion that Dr. Grofman is philosophically or personally biased in favor of Dr. Handley or anyone else. 2021 WL 61998585, *1.

Dated: January 17, 2024

Respectfully submitted,

*/s/ Nathan J. Fink*
FINK BRESSACK
David H. Fink (P28235)
Nathan J. Fink (P75185)
38500 Woodward Ave., Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

*/s/ Richard B. Raile*
BAKER & HOSTETLER LLP
Katherine L. McKnight
Richard B. Raile
Dima J. Atiya
1050 Connecticut Ave., NW, Suite 1100
Washington, D.C. 20036
(202) 861-1500
kmcknight@bakerlaw.com
rraile@bakerlaw.com
datiya@bakerlaw.com

BAKER & HOSTETLER LLP
Patrick T. Lewis
127 Public Square, Suite 2000
Cleveland, Ohio 44114
(216) 621-0200
plewis@bakerlaw.com

*Counsel for Defendants, Michigan Independent Citizens Redistricting Commission, Juanita Curry, Anthony Eid, Rhonda Lange, Steven Terry Lett, Brittni Kellom, Cynthia Orton, Rebecca Szetela, Janice Vallette, Erin Wagner, Richard Weiss, Elaine Andrade, Donna Callaghan, and Marcus Muldoon, each in their official capacities as Commissioners of the Michigan Independent Citizens Redistricting Commission*