UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD AGEE, JR. et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JOCELYN BENSON, et al.,<br><br>    Defendants. | Case No. 1:22-CV-00272-PLM-RMK-JTN<br><br>**COMMENTS OF THE MICHIGAN INDEPENDENT CITIZENS REDISTRICTING COMMISSION TO REPORT OF THE REVIEWING SPECIAL MASTER** |

The Court appointed Dr. Grofman as its Reviewing Special Master because he "is a distinguished political scientist with more than 40 years' experience in the areas of redistricting, voting rights, and political science methodology." ECF No. 164 at 2, PageID.5363. Dr. Grofman's report—prepared without the benefit of the Commission's March 15 remedial brief—aligns with that brief and confirms that the Motown Sound plan satisfies this Court's remedial order. Dr. Grofman finds that Motown Sound was "able to address and remedy the race-related constitutional defects in its previous map" through "extensive" revisions and "substantial geographic shifts." Grofman Rep. at II.2, II.6, PageID.5803, PageID.5806. Dr. Grofman also demonstrates that Motown Sound satisfies the Voting Rights Act by providing multiple districts that afford Black voters "a realistic opportunity to elect candidates of choice" in Democratic primaries. *Id.* at II.4, PageID.5806. Finally, Dr. Grofman agrees that Plaintiffs' "state-law" arguments are not properly before this Court. *Id.* at II.6, PageID.5806. In short, Dr. Grofman confirms that Motown Sound is a constitutionally compliant plan. The Court should decline Plaintiffs' request to enjoin it.

    1.    Dr. Grofman confirms that Motown Sound remedies the constitutional violations this Court found in the Hickory plan.[1]

---

[1] As in prior remedial filings, the Commission waives no challenges to the Court's liability ruling and assumes it is correct solely within the confines of this remedial proceeding.

The Commission's March 15 filing demonstrates that Motown Sound sufficiently alters the enjoined districts to cure the alleged gerrymandering. *See* Response to Pls.' Obj. at 11-18, PageID.5514-21. Dr. Grofman independently reaches the same conclusion. Focusing on the fifteen revised districts, Dr. Grofman finds the changes "very extensive in terms of total population shifts." Grofman Rep. at II.2, PageID.5803. He finds an overlap of "only 57.4%" of residents between Motown Sound districts and their Hickory analogues. *Id*. This approximates Dr. Rodden's conclusion (from the other direction) that 43.7% of the population in revised Hickory districts was moved—"a very substantial departure from Hickory." *See* Rodden Remedial Rep. at 5-7, Tbl.2, PageID.5548-50. Dr. Grofman infers from visually apparent differences, and the reduction of county-line crossings, that the Motown Sound districts "were changed to be responsive to the need to remedy constitutional violations." *See* Grofman Rep. at II.3-3(a), PageID.5803-04; *see also id*. at II.4, PageID.5806.

Dr. Grofman further finds "substantial geographic shifts" in the enjoined districts. *Id*. at II.2, PageID.5803. Even as to the "partial exception" of MHD1,[2] Dr. Grofman finds "demographic changes" carrying "important consequences." *Id*. Plaintiffs' response to Dr. Grofman's report does not quarrel with that finding. *See* ECF No. 172; PageID.5809-27. MHD1 preserves a Hispanic/Latino community in response to public comment, *see* Rodden Remedial Rep. at 5, PageID.5548, resulting in a "combined minority population" of Black and Hispanic voters that Dr. Grofman concludes is an "overwhelming majority of the district's citizen voting age population[.]" Grofman Rep. at n.11, PageID.5805. Dr. Grofman also observes that Motown Sound keeps Dearborn and its "high middle eastern/North African origin population" "largely whole," *id*. at II.3(b), PageID.5804, which the

---

[2] Districts in Motown Sound are designated "MHD#."

2

Commission accomplished in final modifications in response to "overriding public input concerning Arab American communities," Response at 9, PageID.5512.

Plaintiffs' criticism of Dr. Grofman for not examining incumbent pairings misses the mark. *See* ECF No. 172 at 8, PageID.5816. Dr. Grofman's analysis of core retention directly speaks to the relevant question of whether the remedial plan "perpetuat[es] the effects of the racial gerrymander." *North Carolina v. Covington*, 585 U.S. 969, 973 (2018) (per curiam). As the Commission has explained, a remedial map need not pair incumbents; it need only provide districts sufficiently different from those enjoined to cure the prior invidious intent. Response at 33-35, PageID.5536-38. Contrary to Plaintiffs' suggestion, *see* ECF No. 172 at 15, PageID.5823, the district court in *Covington* condemned remedial districts for "seeking to preserve the 'cores' of unconstitutional districts," not for failing to pair incumbents. *Covington v. North Carolina*, 283 F. Supp. 3d 410, 431 (M.D.N.C.), *aff'd in part, rev'd in part*, 585 U.S. 969 (2018); *see also id.* at 433 (same). Here, as the Commission argued, Response at 15, PageID.5518, and as Dr. Grofman finds, Motown Sound eliminates—rather than preserves—the cores of enjoined districts.

2. Dr. Grofman confirms that Motown Sound complies with the VRA. As the Commission explained, the plan includes many districts that provide Black voters at least an equal opportunity to elect their candidates of choice in Democratic primary elections. *See* Response at 12, 29-32, PageID.5515, 5532-35.

a. "Looking only at districts 1-14 and 16," Dr. Grofman finds seven majority-Black districts in Motown Sound.[3] Grofman Rep. at II.3(c), PageID.5804. The Commission

---

[3] The population percentages Dr. Grofman reports differ from those the Commission reported, but the discrepancy is immaterial. *See Georgia v. Ashcroft*, 539 U.S. 461, 474 n.1 (2003). Dr. Grofman's report references "citizen voting age percentages as reported on Dave's Redistricting App, not voting age population," Grofman Rep. at n.11, PageID.5805, whereas the Commission used Black voting age population. *See* Palmer Remedial Rep. at ¶ 10, PageID.5575.

3

reported the same conclusion as to those districts, and also counted an eighth, MHD18, which Dr. Grofman did not examine. *See* Response at 12, PageID.5515. More importantly, the Commission and Dr. Grofman agree in all material respects as to the number of Detroit-area districts that provide the Black community with "a realistic opportunity to elect candidates of choice." *Id*. at II.3-4, PageID.5803-06; *see also* Response at 29-32, PageID.5532-35. While the Commission reported 12 such districts, and Dr. Grofman reports 10, the difference arises merely because MHD17 and MHD18 fell outside the scope of Dr. Grofman's report. Palmer Remedial Rep. at ¶ 18 & Tbl. 3, PageID.5578; Response at 32, PageID.5535.

Notably, Dr. Grofman concurs in the analysis of Mark Braden and Dr. Palmer, the Commission's VRA counsel and expert, by relying on the Commission's determinations regarding projected Democratic primary voter pools. *See, e.g.*, Grofman Rep. at II.3(d)(ii), PageID.5805. Plaintiffs' focus on "BVAPs" and whether they are "too low for Black voters to compete," ECF No. 172 at 4, PageID.5812, simply does not engage—as Dr. Grofman does—with the Commission's approach of looking, not to BVAP, but to Black registration and participation in the Democratic primary elections this Court deemed central to any sound VRA inquiry in metropolitan Detroit.

b.  Dr. Grofman's report rejects Plaintiffs' VRA challenge to MHD10 and MHD12 by finding these districts will provide Black candidates of choice a "realistic opportunity to win the [Democratic] primary election." Grofman Rep. at II.3(d), PageID.5804. Dr. Grofman notes an increase in Black population in MHD12 and endorses the Commission's conclusion that "on average, 43% of the primary electorate are Black Democrats and white Democrats are 25.1%." *Id*. at II.3(d)(ii), PageID.5805. Likewise, Dr. Grofman finds that MHD10 changed "dramatically," experiencing increased compactness with the inclusion of the Grosse Pointe communities and neighboring Detroit precincts. *Id*. at

4

II.3(d)(iii), PageID.5805-06; *see also* Response at 22-23, PageID.5525-26. The result is a performing opportunity district where Black registered Democrats are projected to outnumber white registered Democrats 37.3% to 26.3%. Grofman Rep. at II.3(d)(iii), PageID.5805-06; Response at 29-31, PageID.5532-34. Consistent with the Commission's analysis of MHD10, *see* Response at 21-29, PageID.5524-5531, Dr. Grofman finds the selected configuration superior to alternatives that would create a "70%+ white district" pairing the Grosse Pointe communities with St. Clair Shores and dilute Black opportunity. *See* Grofman Rep. at n.14, PageID.5805. Such a configuration "would require eliminating a realistic opportunity to elect district" in MHD10, "and replacing it with a white district that crossed county lines to pick up white population." *Id*.

That opinion confirms the Commission's position that limited racial considerations related to MHD10 were not predominant and were narrowly tailored to VRA compliance. Response at 27-28, PageID.5530-31. Plaintiffs respond to both Dr. Grofman and the Commission with the same error the Commission previously exposed: Plaintiffs look to January 31 mapping efforts, *see* ECF No. 172 at 6-7, PageID.5815, that were discarded on February 1. *See* Response at 24, PageID.5527. That Plaintiffs know of this flaw in their position but persist regardless proves they have no viable challenge to Motown Sound.

3. Dr. Grofman agrees with the Commission that Plaintiffs' state-law arguments are not properly before this Court. Plaintiffs' principal argument is that the Commission violated Michigan law by purposefully avoiding incumbent pairings, and it fails in every respect. *See* Response at 32-38, PageID.5535-41. Most notably, this Court lacks jurisdiction to adjudicate the objection. *Id*. at 32-33, PageID.5535-36. Dr. Grofman agrees and correctly declines to address issues that are "only state-law related," which are not properly presented in "a federal case dealing with issues related to race." Grofman Rep. at II.6, PageID.5806.

5

Motown Sound remedies the violations this Court found in the Hickory plan and complies with the VRA. Dr. Grofman confirms this. The Court should reject Plaintiffs' contrary arguments, decline to enjoin Motown Sound, and declare that the Secretary of State may implement the plan for the 2024 elections and beyond.

The Court should also deny Plaintiffs' untimely demand for leave to submit their own remedial plan. ECF No. 172 at 17-18, PageID.5825-26. Plaintiffs' counsel appeared and spoke at a press conference publicizing a proposed remedial plan (which they now inexplicably call an "unaffiliated" effort, *id.* at 19, PageID.5826). *See* ECF No. 169-3 at 4-6 (statements of Plaintiffs' counsel Jennifer Green). Plaintiffs could have submitted that plan (or another) to the Commission or the Court for timely consideration. They did neither. It would be prejudicial to the parties and the voting public for Plaintiffs to submit a last minute plan, drawn in secret, on the eve of the Court's March 29 target date for a remedial ruling.

Dated: March 25, 2024

BAKER & HOSTETLER LLP
Katherine L. McKnight
Richard B. Raile
Dima J. Atiya
1050 Connecticut Ave., NW,
Suite 1100
Washington, D.C. 20036
(202) 861-1500
kmcknight@bakerlaw.com
rraile@bakerlaw.com
datiya@bakerlaw.com

BAKER & HOSTETLER LLP
Patrick T. Lewis
Key Tower, 127 Public Square, Suite 2000
Cleveland, Ohio 44114
(216) 621-0200
plewis@bakerlaw.com

Respectfully submitted,

/s/ David H. Fink
FINK BRESSACK
David H. Fink
Nathan J. Fink
38500 Woodward Ave., Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

*Counsel for Defendants, Michigan Independent Citizens Redistricting Commission, and Elaine Andrade, Donna Callaghan, Juanita Curry, Anthony Eid, Rhonda Lange, Steven Terry Lett, Brittni Kellom, Marcus Muldoon, Cynthia Orton, Rebecca Szetela, Janice Vallette, Erin Wagner, and Richard Weiss, each in his or her official capacity as a Commissioner of the Michigan Independent Citizens Redistricting Commission*

6

BAKER & HOSTETLER LLP
Erika D. Prouty
200 Civic Center Drive
Suite 1200
Columbus, Ohio 43215
(614) 228-1541
eprouty@bakerlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on March 25, 2024, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

                                    /s/ David H. Fink
                                    David H. Fink