UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD AGEE, JR. et al., <br><br> Plaintiffs, <br><br> v. <br><br> JOCELYN BENSON, et al., <br><br> Defendants. | Case No. 1:22-CV-00272-PLM-RMK-DML <br><br> **RESPONSE OF THE MICHIGAN INDEPENDENT CITIZENS REDISTRICTING COMMISSION TO PLAINTIFFS' STATEMENT OF NON-OBJECTION TO THE COMMISSION'S PROPOSED REMEDIAL SENATE PLAN** |

In more than two years of litigation, the parties have disagreed on many things. But they now agree that this Court should not enjoin the senate remedial plan of the Michigan Independent Citizens Redistricting Commission (the Commission), known as "Crane A1" (the Crane plan)[1]. Plaintiffs acknowledge that the Crane plan "complies with this Court's previous orders," and they identify no basis to contend that it violates federal law. ECF No. 185 at 1, PageID.5893. With that, this Court's "proper role in [Michigan's] legislative districting process [is] at an end." *North Carolina v. Covington*, 585 U.S. 969, 979 (2018) (per curiam).

1. Consistent with governing precedent, this Court afforded the Commission the "opportunity to prepare its own remedial-redistricting plan." ECF No. 175 at 5, PageID.5850. The Commission accepted that opportunity by adopting, through constitutionally prescribed means, the Crane plan. Accordingly, this Court's role now is to determine whether the Crane

---

[1] The "Crane A1" plan is a revision of the Commission's draft "Crane" plan. The draft "Crane" plan was also referred to in the Commission's record as "051524_SD_COL_V2" or "Map 385."

plan contravenes "the clear commands of federal law." *Id.*, PageID.5850 (quoting *Covington*, 585 U.S. at 979. It does not.

To begin, the Crane plan relieves Plaintiffs "of the burden of voting in racially gerrymandered legislative districts." *Covington*, 585 U.S. at 978. Plaintiffs' expert, Dr. Trende, finds "[i]t is obvious that the constitutionally offensive 'spoke concept' that animated the Linden map has been abandoned." ECF No. 185-1 at 2, PageID.5899. This Court made a similar finding in approving the Commission's remedial house plan (known as Motown Sound). *See* ECF No. 175 at 3-4, PageID.5899. Moreover, the districts of the Linden plan that this Court enjoined districts (1, 3, 6, 8, 10, and 11) have been completely redrawn, retaining only from 49.08% to 58.91% of their cores. *See* ECF No. 185-1 at 3, PageID.5900. This is lower core retention than that of Motown Sound remedial districts this Court approved. *See* ECF No. 169-1 at 28-29, PageID. 5570-80; ECF No. 175 at 8, PageID.5853. Dr. Trende is correct to find that "the cores of the unconstitutional districts have been unwound." ECF No. 185-1 at 1, PageID.5900.

Plaintiffs are also correct in acknowledging no "evidence [of] any impermissible reliance upon race." ECF No. 185 at 1-1. As with the house remedial redistricting, the Commission "voted to establish a map-drawing process that began by all Commissioners proceeding with no consideration of race and with race turned off wherever possible on any map drawing software." ECF No. 175 at 2, PageID.5847; 1/11/2024 Tr. at 44–45. The Commission would consider race only where it had a strong basis in evidence to believe a race-blind plan would violate the Voting Rights Act (VRA). 5/16/2024 Tr. at 8. In fact, the Crane plan was found to comply with the VRA as drafted without consideration of race.

2

Redistricting & Voting Rights Act Analysis Presentation, (May 21, 2024)[2]; *see infra* § 2. Accordingly, the plan remained race-blind. As the Supreme Court recently made clear in a remedial redistricting case, "[t]he allocation of the burden of proof and the presumption of legislative good faith are not changed by a finding of past discrimination." *Abbott v. Perez*, 585 U.S. 579, 603 (2018). Needless to say, there is no basis to find impermissible race-based line-drawing where it is not even alleged.

2.  The only remaining federal question is whether the Crane plan satisfies the VRA. The answer is yes. Dr. Trende finds that the Crane plan "improves [Black] opportunity to elect candidates of choice," ECF No. 185-1 at 7, PageID.5904, and Plaintiffs offer no VRA-based objection. He identifies three districts in the Crane plan with Black voting-age populations (BVAPs) above 45%. *Id.* He states, based on a simulation-mapping exercise, "that it is still easy to draw four majority Black state Senate districts," but finds it sufficient that "this map represents a clear improvement over the status quo." *Id.*

But this analysis undersells the case for the Crane plan's VRA compliance. First, the analysis focuses on the number of majority-Black districts rather than the number of districts that provide effective minority electoral opportunity. But even if four majority-Black districts represents the Section 2 baseline, the Crane plan would satisfy that mark. The Commission's VRA counsel, Mark Braden, performed "an analysis of *primary* election data," which this Court accepted in considering Motown Sound, ECF No. 175 at 7-8, PageID.5852-53, and concluded that the Crane plan contains four minority-opportunity districts: SD-1, 3, 6, and 7. *See* Redistricting & Voting Rights Act Analysis Presentation, (May 21, 2024). Specifically,

---

[2] Available at https://www.michigan.gov/micrc/meeting-notices-and-materials (last visited July 11, 2024).

Mr. Braden determined that Black voters outnumber white voters in both the Democratic primary electorate and the Democratic primary pool.[3] *Id.* Thus, where the Crane plan provides four opportunity districts, race-based measures to achieve four majority-minority districts could not be narrowly tailored to VRA compliance—since the VRA is *already* satisfied by the four existing opportunity districts. *See Cooper v. Harris*, 581 U.S. 285, 301–06 (2017) (finding racial gerrymandering violation in efforts to create a majority-minority district, where evidence showed the existing district below 50% BVAP would likely afford equal opportunity). Any suggestion that four majority-minority districts are necessary on this record would "'embraces just the sort of uncritical majority-minority district maximization that' the Supreme Court has 'expressly rejected.'" ECF No. 175 at 9, PageID.5854.

Second, Dr. Trende's computer-simulation approach is not probative for reasons identified in *Allen v. Milligan*, 599 U.S. 1, 35–37 (2023), and *Alexander v. South Carolina State Conf. of the NAACP*, 144 S. Ct. 1221, 1244–45 (2024). Dr. Trende's plans do not "accurately represent[] the districting process in" Michigan. *Milligan*, 599 U.S. at 34. Dr. Trende ran his simulation program to follow jurisdictional lines and limit county traversals, ECF No. 185-1 at 4, PageID.5902, but the Commission prioritizes communities of interest as discerned from public comments, *See Banerian v. Benson*, 589 F. Supp. 3d 735, 738 (W.D. Mich. 2022) (three-judge court); *Banerian v. Benson*, 597 F. Supp. 3d 1163, 1169 (W.D. Mich.) (three-judge court), *appeal dismissed as moot*, 143 S. Ct. 400 (2022).

---

[3] The special master's report questions (but does not refute) the Commission's view that the Crane plan includes four opportunity districts. The Commission will address that report by the requisite deadline. For present purposes, it is sufficient that Dr. Trende and Plaintiffs do not address or cast doubt on the analysis of the Commission's VRA counsel.

    The more probative piece of evidence is the collection of twelve proposed remedial plans the Commission developed and published for public comment. All were prepared by commissioners to achieve communities of interest understood in various ways, using the Michigan Constitution's criteria, and *none* of those plans contained four majority-Black districts.[4] With due respect to Dr. Trende, the Commission submits that this record does not provide reason to believe it is "easy" to create a sound plan with four majority-Black districts. Section 2 of the VRA "never require[s] adoption of districts that violate traditional redistricting principles." *Milligan*, 599 U.S. at 30 (citation omitted). Where no plan that was a plausible contender for the Commission's consideration contained four majority-Black districts, there is no reason to conclude that four is the correct number under Section 2. *Cf.* ECF No. 175 at 9, PageID.5854 (rejecting Plaintiffs' VRA objection to Motown Sound because they "make close to zero effort to show that the remedial plan actually violates the VRA.").

    For these reasons, and those Plaintiffs have offered, the Court should decline to enjoin the Crane plan and declare that the Secretary of State may implement the plan for future elections.

Dated: July 12, 2024

BAKER & HOSTETLER LLP
Katherine L. McKnight
Richard B. Raile
Dima J. Atiya

Respectfully submitted,

/s/ David H. Fink
FINK BRESSACK
David H. Fink
Nathan J. Fink
38500 Woodward Ave., Suite 350

---

[4] *See* 2024 Draft Proposed Senate Maps, MICRC, https://www.michigan.gov/micrc/mapping-process-2024/draft-proposed-maps-2024-senate (last visited July 11, 2024).

1050 Connecticut Ave., NW,
Suite 1100
Washington, D.C. 20036
(202) 861-1500
kmcknight@bakerlaw.com
rraile@bakerlaw.com
datiya@bakerlaw.com

BAKER & HOSTETLER LLP
Patrick T. Lewis
Key Tower, 127 Public Square,
Suite 2000
Cleveland, Ohio 44114
(216) 621-0200
plewis@bakerlaw.com

BAKER & HOSTETLER LLP
Erika D. Prouty
200 Civic Center Drive
Suite 1200
Columbus, Ohio 43215
(614) 228-1541
eprouty@bakerlaw.com

Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

*Counsel for Defendants, Michigan Independent Citizens Redistricting Commission, and Elaine Andrade, Donna Callaghan, Juanita Curry, Anthony Eid, Rhonda Lange, Steven Terry Lett, Brittni Kellom, Marcus Muldoon, Cynthia Orton, Rebecca Szetela, Janice Vallette, Erin Wagner, and Richard Weiss, each in his or her official capacity as a Commissioner of the Michigan Independent Citizens Redistricting Commission*