UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD AGEE, JR., *et al.*, <br>         Plaintiffs, <br><br> v. <br><br> JOCELYN BENSON, in her official capacity as the Secretary of State of Michigan, *et al.*, <br>         Defendants. | No. 1:22-cv-272 <br><br> Three Judge Court |

## OPINION AND ORDER

PER CURIAM. On December 21, 2023, we unanimously held that the Michigan Independent Citizens Redistricting Commission violated the Equal Protection Clause of the U.S. Constitution when it drew the boundaries of thirteen state-legislative districts—seven House districts, and six Senate—predominantly on the basis of race. We therefore enjoined the Michigan Secretary of State, Jocelyn Benson, from holding further elections in those districts as they were drawn. (ECF No. 131). The Commission has now submitted a revised Senate map, which Plaintiffs agree "eliminates the predominate use of race that characterized" the previous plan. (ECF No. 184, 185). We have reviewed the record before us and agree that the new Senate map complies with this court's December 21, 2023, opinion and order.

I.

Under Michigan law, the State will hold its next Senate elections in 2026. We therefore ordered the Commission to adopt a remedial Senate map before those elections

1

take place. (ECF No. 156). We also appointed two special masters to assist the court during the remedial map-drawing process. As relevant to the Senate map, we appointed Dr. Bernard Grofman to evaluate the Commission's remedial plan and to offer the court his advice as to whether that plan lawfully remedies the constitutional violations identified in our December 21, 2023, opinion and order. (ECF No. 178).

In response to our December 21, 2023, opinion and order, the Commission adopted several procedures for drawing its revised maps. Two are relevant here. First, the Commission unanimously voted to "establish a map-drawing process" that began "by all Commissioners proceeding with no consideration of race and with race turned off wherever possible on any map drawing software." *See* 1/11/2024 MICRC Tr. at 44-45. That resolution also provided that—after the Commission had "prepared" a draft map in race-neutral fashion—it would send the map to its Voting Right Act counsel for analysis. *Id.* Second, the Commission chose to draw its remedial district lines from a blank slate. *See* MICRC Tr. 1/11/24 at 42; 1/16/24 at 11, 18.

The Commission eventually put forward twelve different maps for public comment, each of which revised the configurations for Michigan Senate Districts 1, 3, 6, 8, 10, and 11. (ECF No. 182). After three public hearings in Detroit, the Commission selected the "Crane A1" plan. (ECF No. 184).

Plaintiffs filed "a statement of non-objection" to the new Crane A1 Senate map, in which they stated that the map "eliminates the former 'spoke concept,' reduces county splits, is reasonably compact, has an appropriate core retention, enhances minority voting opportunity, maintains an acceptable partisan balance, and does not evidence any

2

impermissible reliance upon race." (ECF No. 185 at PageID.5893-94). Plaintiffs relied on the report of their expert, Dr. Sean Trende, who concluded that the remedial map "appear[s] to eliminate the predominate use of race that characterized the previous plan." (ECF No. 185-1).

Dr. Grofman also submitted a report in which he concluded that the Commission's remedial plan "adequately addresses the constitutional concerns of the Court by offering a plan in which race is not a preponderant motive and in which the criteria specified by the Michigan Constitution are satisfied." (ECF No. 190). Among other things, Dr. Grofman observed that the new districts are more compact, and that none of the six invalidated districts have more than a 60% overlap with their district's previous configuration. (ECF No. 190 at PageID.5935). Dr. Grofman also noted the substantial demographic shifts in the Crane A1 Senate map. Crane A1 includes two majority-minority districts (SD 3, SD 6), one minority opportunity district (SD 1), and one potential minority opportunity district (SD 7).

| Crane A1 Senate Districts | Black Voting Age Percentage in Democratic Primaries | White Voting Age Percentage in Democratic Primaries |
|---|---|---|
| SD 1 | 46.9% | 23.2% |
| SD 3 | 75.4% | 13.8% |
| SD 6 | 77.3% | 10.8% |
| SD 7 | 31.2% | 30.6% |

II.

After a court holds that electoral districts violate federal law, the court must typically afford the relevant state actor an adequate opportunity to prepare its own remedial-redistricting plan. See *McDaniel v. Sanchez,* 452 U.S. 130, 150 n.30 (1981) (collecting cases). During the process of drawing a remedial plan, the federal court should restrict the state actor only as required by "the clear commands of federal law." *North Carolina v. Covington,* 585 U.S. 969, 979 (2018) (internal quotation marks omitted).

III.

Here, everyone agrees that the new Crane A1 Senate map complies with federal law to the extent the Commission did not impermissibly rely upon race when drafting it. Plaintiffs do not object to the new map. And the Reviewing Special Master, Dr. Grofman, recommended approving it.

The record reflects that the Crane A1 Senate map was drawn race-blind. The Commission is entitled to a presumption of legislative good faith. *Abbott v. Perez,* 585 U.S. 579, 603 (2018). And we must be "sensitive to the complex interplay of forces that enter a legislature's redistricting calculus." *Miller v. Johnson,* 515 U.S. 900, 915–16 (1995). We note that *Alexander v. South Carolina State Conference of the NAACP*, 144 S. Ct. 1221 (2024), decided after we filed our original order in December of last year, is inapplicable here because it dealt with the quantum of evidence required for a racial gerrymandering claim based on circumstantial evidence. By contrast, our December 21, 2023, order relied on direct evidence.

4

We have reviewed the record before us and agree that the new Senate map complies with this court's December 21, 2023 order. Federal law provides us no basis to reject the Commission's remedial Senate plan. The Secretary of State may proceed to implement the Commission's remedial Senate plan for the next election cycle.

**IT IS SO ORDERED.**

Date:  July 26, 2024              /s/ Raymond M. Kethledge
                                                             Raymond M. Kethledge
                                                            United States Circuit Judge

                                                            /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge

                                                            /s/ David M. Lawson
                                                            David M. Lawson
                                                            United States District Judge